## J. Noble Hayes, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 4611.   Promulgated August 1, 1927.

1. Expenses incurred and paid in prior years may not be deducted, though incidental to the earning of income received and reported within the year.

2. No deduction may be claimed under section 214, Revenue Act of 1918, for a loss of a gain which has never been included in income.

3. The fact that the portion of services rendered on a contingent-fee basis, to create a debt, were performed prior to March 1, 1913, does not alter the rule that the amount of a debt which has never been included in income, may not be claimed as a bad debt deduction, where the contingency, making the obligation due and payable, is not met until subsequent years.

4. An obligation can not be held to be deductible as a bad debt while a legal remedy is being actively pursued to recover it.

5. Neither forgiveness of a debt nor disinclination to enforce payment, constitute the debt worthless to permit of deduction.

*J. Noble Hayes* pro se.
*J. E. Marshall, Esq.*, for the respondent.

This proceeding involves the redetermination of a deficiency in income tax for the year 1919, in the amount of $1,833.14. The deficiency arises from the fact that respondent has refused to permit petitioner to take certain deductions. Petitioner also contends that respondent did not possess the authority to make a redetermination for the reason that respondent, prior to making such redetermination, and with all facts before him, had determined that petitioner had properly reported his income.

### FINDINGS OF FACT.

Petitioner is an attorney and counsellor at law in the State of New York. He was admitted to practice in said State in the year 1880, and has been in the practice since that date. At all times hereinafter mentioned, petitioner kept no books of account as that term is understood in the business world. He kept an ordinary lawyer's register or daybook in which was entered the daily history of the litigation in which he was employed and the disbursements which he made. He never entered a charge of any kind in this or any other books. If he received a retainer or a fee, he gave a receipt therefor and deposited the money in the bank. These, with his canceled checks and stub books, were the only record of the receipts of petitioner, with the possible exception of copies of letters of acknowl-

edgement. All cases were accepted by him on a *quantum meruit* basis, except those cases in which he was to receive a contingent fee. In this latter class of cases, the agreement was generally evidenced by a written contract. When an employment other than on a contingent basis was closed, petitioner, by a purely mental operation, fixed his fee and requested payment. If the fee was paid, a receipt was given therefor and the money deposited in the bank, but if, after the use of persuasion, the fee was not paid, the matter was dropped, unless the client was guilty of fraud.

In his income-tax return for the year 1919, petitioner reported as income from his profession, $32,545. From this he deducted the following items:

| | |
|---|---:|
| Salaries and wages | $3,837.50 |
| Rent on business property | 3,810.00 |
| Repairs, wear, tear, obsolescence, etc. | 528.94 |
| Bad debts arising from professional services | 5,650.00 |
| Other expenses | 1,919.20 |
| | 15,745.64 |

The amount of gross income, $32,545, included the following fees from two employments:

| | |
|---|---:|
| *Masury* case | $30,000 |
| *Fowler* v. *Westerhoff* | 2,000 |
| | 32,000 |

Petitioner was employed in the *Masury* case in 1913 and prosecuted it to a conclusion in 1919, when he fixed his fee at $30,000, which his client paid in that year. In 1916, he was employed in the *Fowler* case. In this matter, he received a fee of $2,000 in 1919. These two matters comprised the greater part, if not all, of petitioner's business, from 1915 to 1920. During the greater part of this time, he was ill and in a hospital. Petitioner had no taxable income in the years 1913, 1914, 1915, 1916, and 1918.

Respondent allowed petitioner, in determining the deficiency, the following deductions:

| | |
|---|---:|
| Salaries | $1,310.50 |
| Rent | 2,211.00 |
| Repairs, depreciation, etc. | 528.94 |
| Other expenses | 836.20 |
| | 4,886.64 |

He rejected claim for these items of deduction in the sum of $5,209, being the difference between the salaries, rents, repairs and other expenses reported and allowed, and the salaries, rents, repairs and other expenses reported and rejected. This amount of $5,209 represented expenses incurred and paid in years prior to 1919.

Respondent also disallowed as a deduction claimed by petitioner for bad debts, the amount of $5,650. The bad debt item was made up of the following fees, which petitioner claims were due and owing him and which he found to be worthless and charged off in the year 1919:

| | |
|---|---:|
| Fee in the case of *Frear* v. *Lewis* | $5,000 |
| Fee for services, Paul Kruger | 500 |
| Services to Clara Karibe | 150 |
| | 5,650 |

Petitioner, at the hearing and with the consent of respondent, amended his petition and now seeks to deduct the following additional amounts as worthless debts, which he asserts were found to be worthless and charged off in 1919:

| | |
|---|---:|
| Professional services to Anna B. Williams | $5,000 |
| Services to Hoosick School | 1,500 |
| Services to Frear in two suits other than the one above mentioned | 500 |
| | 7,000 |

On May 24, 1909, petitioner was retained by Frear to represent him in a controversy between him and his partner, Lewis. Petitioner's fee was to be paid on a *quantum meruit* basis. In January, 1910, petitioner, as attorney for Frear, brought an action in the Supreme Court of Kings County, New York, against Lewis, for an accounting of the partnership affairs of the firm of Lewis & Frear. In the eight years preceding the bringing of the suit, this partnership had had an income of $185,000, and in the three years immediately preceding bringing of the suit, it had an income of $33,000 a year. This income had been divided equally between the partners. Lewis had ousted Frear from the partnership and formed a new partnership with one Gendar. The principal asset of the firm of Lewis & Frear was good will, which was valued by plaintiff's witnesses at approximately $100,000. After the suit had been pending for some time, and on the 5th day of January, 1912, the petitioner and Frear entered into the following contract:

This agreement, entered into this 5th day of January, 1912, witnesseth that, for and in consideration of professional services heretofore rendered in the above-entitled action pending in the Supreme Court of Kings County for a partnership accounting and services agreed to be rendered by J. Noble Hayes, Esq., as my attorney and counsel in the further prosecution of the said suit up to the trial and entry of judgment therein, I hereby assign to said Hayes one-fourth (¼) of any sum that I may recover on account of said claim or suit against the defendants or either of them, howsoever, either by settlement or judgment.

Dated this 5th day of January, 1912.

J. NOBLE HAYES.
FRANK B. FREAR.

Witness by Edwin Vandewater.

The action was tried at the Special Term, Kings County, April, 1913, and judgment entered dissolving the partnership of Lewis & Frear but holding that the good will of the firm was of no value, and directing that the partners' accounts be settled before a designated official referee in Kings County. The plaintiff appealed and on appeal succeeded in obtaining a modification of the interlocutory judgment and findings to the effect that the good will was of some value and awarding plaintiff costs, payable from the assets of the firm, if any. See *Frear* v. *Lewis*, 151 N. Y. S. 486.

In 1915, the case was again before the appellate division on appeal by defendant Lewis from an order permitting inspection of the books and papers of the firms of Lewis & Frear and Lewis & Gendar, for the purposes of said reference, and the court reversed the order as unnecessary, in view of the fact that the books could be produced before the referee by subpoena *duces tecum.* See 156 N. Y. S. 794.

Thereafter, hearings were had before a referee of Kings County and the referee ultimately held that the good will was worth only $1,100, being the average of one month's profit during the latter part of the existence of the partnership, and that defendant was indebted to plaintiff Lewis in a large sum as a balance on account. The plaintiff consistently opposed the confirmation of this report at a special term of the supreme court, Honorable Russell Benedict, Justice, presiding. Judge Benedict wrote an opinion sustaining the plaintiff's contentions regarding the proper method of obtaining the value of the good will of the partnership and ultimately an order was made referring the case to M. H. Hirschberg, official referee, to take and settle the accounts of the parties. This latter action was taken in the early part of the year 1919. While the matter was thus pending before an official referee, defendant or his counsel, secured from the plaintiff Frear, his written consent dated March 12, 1919, that the action be discontinued without costs to either party. On April 26, 1919, defendant Lewis, by his attorney, notified the petitioner, as attorney for the plaintiff, that he would, on May 2, 1919, move the court for an order discontinuing the action without costs to either party. This motion petitioner opposed, for the reason, among other grounds, that it was a fraud upon him. Hearing was had, and on the 29th day of June, 1921, the following order was entered:

ORDERED that the Report of the Official Referee finding "that the consent to discontinuance of this action made, executed and acknowledged by the plaintiff on the 12th day of March, 1919, and delivered to the defendant Alfred H. Lewis, was given by the plaintiff and accepted by the said defendant in fraud of the rights of J. Noble Hayes, as attorney for the plaintiff and the rights of Paul Roder and Mrs. Mildred L. Weatherby, assignees of part of plaintiff's

cause of action, and that it will also impair the plaintiff's wife's chance of collecting accrued alimony on her judgment therefor against plaintiff " be and the same is hereby confirmed and adopted as the finding of this Court and the said Report in all respects confirmed, and

FURTHER AND ACCORDINGLY ORDERED that the motion made by the defendant to discontinue the said action be denied, with costs of the said motion to J. Noble Hayes, attorney of plaintiff and in person and for Mildred L. Weatherby, against the defendant.

FURTHER ORDERED that the said action be continued under its present title for the protection of the lien of plaintiff's attorney, J. Noble Hayes, and Mildred L. Weatherby, assignee, etc.

Enter,

JOSEPH ASPINALL
J. S. C.

Granted June 29, 1921.

WILLIAM E. KELLY, Clerk.

From the above order, the defendant Lewis filed appeal to the Appellate Division of the Supreme Court of New York, Second Department. The order appealed from was affirmed by the Appellate Division of the Supreme Court, June 9, 1922. See *Frear* v. *Lewis*. 195 N. Y. S. 3.

Petitioner contends that when his client deserted him and breached the contract of employment, he was entitled to elect to recover a fee on a *quantum meruit* basis and on this basis he estimates that his services were worth from $5,000 to $7,000.

Petitioner was employed by Paul Kruger, who was having trouble about a lease on a piece of property in Park Row and who was also having some financial trouble which resulted in his arrest. Petitioner went to the District Attorney's office several times and got him out of his trouble and straightened out his affairs. Petitioner informed Kruger that his fee was $500. Kruger told petitioner that he would come in the next week and pay it. Petitioner has never seen him since. Kruger's fee fell due in 1919.

Petitioner was employed by Clara Karibe to attend to certain legal matters for her, the nature of which does not appear, except to the extent that some one had her ejected from her house and she was put into the street. Plaintiff charged her $150 for his services. She was insolvent and did not pay. This fee was due in 1919.

In 1916, petitioner was retained in the case of the Reformed Episcopal Church against the Hoosick Church & School. His client was successful in the action. He was employed in 1916, together with George B. Wellington. Wellington, after the action was over, wrote petitioner, asking what fee he was going to charge and stating that he, Wellington, had charged $1,500. Petitioner made up his mind at that time, that $1,500 was a reasonable fee and that he also would fix his fee at that amount. Thereafter, Mr. Tibbetts, who seems to

have been the prime mover in employing petitioner, invited petitioner to Hoosick to a dinner on Thanksgiving Day, 1919, at the school. Tibbetts introduced petitioner to the boys and girls and said "Mr. Hayes is the man who saved the Hoosick School, and he has done it without compensation." This surprised petitioner, but after the statement had been made, he did not feel that he should enforce the payment of his fee, and therefore, in 1919, petitioner determined not to collect the fee.

In 1915 or 1916, Miss Anna B. Williams, who was about 78 years of age, employed petitioner in a matter, the details of which we do not know. There was quite a long litigation extending from 1916 to 1919. When the litigation was completed, it was found that Miss Williams had had to sell her cottage in the Adirondacks, that she had a sister who was incompetent, and who had a little money and with whom she lived, that while she, Miss Williams, had some money, she felt that she would not have enough to get through life and therefore, in 1919, petitioner wrote Miss Williams she need never pay anything for the services.

In the year 1918 or 1919, Frear, the same person above mentioned, was sued by a man named Rogers, in the Supreme Court of New York, in two suits on two notes for $2,500 each. Petitioner defended these suits for Frear and told him that he would charge him $250 in each suit, to which Frear agreed. Nothing was paid on the notes. Frear was insolvent in both the year 1918 and 1919, having no assets whatever and only the expectancy of a recovery in the suit of *Frear* v. *Lewis*.

Petitioner did not return for income tax, the fees which he claims as deductions as worthless debts and which total $12,650, or any part of them, in his return for the year 1919, or in his return for any previous year.

Petitioner made his return for the year 1919, on Form 1040, and therein stated that it was made on the basis of income received. Petitioner attached to and filed with his income-tax return, the following statement:

All payments received by me in 1919, for professional services, except about $500, were for services rendered in two cases, to wit, *Masury* v. *Masury Co.*, and *Fowler, Trustee,* v. *Westerhoff Bros. Co.* The former I was retained in, in 1913, and the latter in 1916, about April; and I rendered continuous services in each until they were ended about July, 1918. My fees received at that time, for the whole services over the whole period were, $30,000 in the *Masury* case, and $2,045 in the *Fowler* case. These two cases constituted my principal business or the greater part of it from the years 1914 to 1920 and my office and professional expenses were principally incurred for them and a case entitled Matter of James (which enabled me to make a return for 1917). Three other matters, to wit, *Matter of Ringer, Karibe* v. *Earle,* and *Frear* v. *Lewis,* which was begun in 1908 and continued down to date and my fees in

which for services since May 11, 1913, are not secured and amount to $5,000. My client has become entirely impecunious and irresponsible, his wife is pursuing him for an alimony. judgment of about $7,000, and he resides in New Jersey and has kept away from me for nearly a year and has tried to settle the case of *Frear* v. *Lewis* secretly, which is his only asset. I regard my claim for my services in this suit since May 11, 1913, as utterly worthless, even if the contested fraudulent settlement is set aside; and the same is true of my claim of $500 against Henry Kruger, which he promised to pay over two years ago; he is insolvent and has gone out of the state. My bill against Mrs. Karibe rendered several years ago, is also uncollectible and I have this year determined that these claims to the amount of $5650 are utterly worthless, and bad debts written them off accordingly. If recovered, or any portion thereof hereafter, the recovery will be put into my returns of subsequent years.

In 1915, 1916 and 1917, I was sick and in 1916 and 1917, was in the hospital twice for major operations to save my life, from the effects of which I have but recently entirely recovered. My income in those years, with the exception of 1917, for which I filed a return, was not sufficient to pay my professional business expenses and leave an amount subject to tax. In 1918, I barely paid my office expenses out of income. In 1914, I had no taxable income and 1 have lived and carried on my profession during these lean and tight years on principal and some borrowed money.

To earn the fees received in 1919, I have had to spend for my office and professional expenses, the amount which I have put into my return as reasonable charges to the two cases which constituted so large a part of my business from 1914 to 1920. Considering everything, I deem it fair to apportion my office expenses from 1914 to 1918 from these two cases at ⅓ of the total expenses for the period and ½ for 1918; which I am sure represents less than the actual share legitimately chargeable to these two cases, especially the *Masury* case.

I have taken the greatest pains to figure it out as accurately as I could, and while it is troublesome matter I feel sure that the result reached is eminently fair to the Government which seeks to tax only just and actual *Net income*.

Thereafter, on July 8, 1921, he received a letter from E. H. Batson, Deputy Commissioner of Internal Revenue, which stated that an audit of his return disclosed a further tax of $888.67. This increase was occasioned by rejection by the Commissioner of the item of $5,650, representing a deduction made by petitioner as bad debts. Thereupon ensued a lengthy correspondence between petitioner and the respondent, relative to these deductions. In a letter from petitioner to respondent, dated July 12, 1921, petitioner stated:

I think you are under some misapprehension in regard to this matter. In the first place, my return was not made on a cash basis but on an accrued basis, as you will see upon a careful reading of the statement accompanying the return.

In a letter from petitioner to respondent, dated September 1, 1921, he said:

I may say now that such law business as I have does not require any very extensive system of books, and does not justify a bookkeeper. For the last few years, it has been very difficult to make ends meet, with rents raised 200% as mine has been and everything in proportion.

I keep an office Register in which my work in various cases and the proceedings in each are supposed to be recorded daily and are when I am at the office

personally. My check book shows most of my disbursements, as does my office Register in part. I make up my bills from my Register, sometimes itemizing them at length, and sometimes merely stating the amount owed by letter, and if any honest client can't pay my bill he is never prosecuted for it. I have lost a good deal of money in my 42 years practice, but have managed to get along, but not much more.

To this and to other letters from petitioner, respondent replied in letter dated November 21, 1921, in which he advised the petitioner that a reexamination of his return would be made in connection with information furnished and that he would be later advised as to the result. On June 6, 1922, respondent wrote the following letter to petitioner:

Reference is made to your letter in which you refer to the further tax liability of $888.67 on your 1918 (1919) income tax return, Form 1040.

The assessment was based on the addition of $5650.00 to your taxable net income representing bad debts, since under the method of reporting on the cash receipts basis, such an amount has never been included in gross income.

You state that the bad debts $5650.00 referred to above were incurred in connection with your business, and after being determined worthless and uncollectible, were charged off your books.

In view of the additional information submitted, and in as much as it appears that your accounts were not kept on a strictly cash receipts basis, the proposed assessment will not be made, and you may disregard office letter of July 8, 1921.

Thereafter respondent determined the deficiency here in controversy.

#### OPINION.

MILLIKEN: Respondent did not err in refusing to permit petitioner to take as a deduction the amounts paid by him in previous years for salaries, rent and other expenses of his business. Section 214(a)(1) of the Revenue Act of 1918 permits as deductions in this respect, only "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." None of the expenses which respondent denied as deductions was incurred or paid during the year 1919, the taxable year in question.

Setting on the side for the instant the vital question whether one can charge off that which he has never charged on, whether he can take as a deduction a worthless debt which he has not reported as income, we will consider whether the debts which petitioner claims he ascertained to be worthless in 1919 and charged off in that year, were otherwise deductible under section 214 of the Revenue Act of 1918.

Petitioner can not be held to have either charged off (if he could charge off that which he had never charged on) his fee in the case of *Frear* v. *Lewis;* nor can it be held that he ascertained that this fee

was worthless during the year 1919. During the whole remainder of that year, after his client deserted him he was pursuing a legal remedy to recover this fee. He was resisting the dismissal of the *Frear* v. *Lewis* case and seeking the right to prosecute it for the purpose of recovering his fee. While it is true that a person can, by mental process both charge on and charge off a debt in those cases where the process of accounting is purely mental (see *Appeal of Charles A. Collin*, 1 B. T. A. 305), yet it can not be held that one can mentally charge off a debt while at the same time he is persistently pursuing a legal remedy to recover it, and especially where he continues such prosecution for years afterward. Nor can it be held that petitioner ascertained this fee to be worthless in 1919, during which time he was expending time and effort to effect its recovery.

It is not shown that petitioner ascertained that the Kruger fee became worthless in 1919, or that Kruger's debt was any more valuable when the services were rendered than at any other time during that year. Petitioner merely testifies that after promising to pay, Kruger never came back.

It is not shown nor attempted to be shown that the Hoosick Church & School was insolvent in 1919. The same is true as to Miss Williams. In the first case, petitioner relinquished his fee because he felt disinclined to collect it and the last case he forgave the debt. Neither the forgiveness of a debt nor the disinclination of a creditor to enforce payment, makes a debt worthless. See *Appeal of Joseph M. Byrne*, 1 B. T. A. 996, and *Appeal of G. C. Krack*, 1 B. T. A. 1119.

We have discussed these amounts sought to be deducted as worthless debts as though they had been charged off by the petitioner after having been reported by him as income. However, petitioner has done neither of these things. The right to deduct the so-called worthless debts must be denied on the authority of *Appeal of Charles A. Collin, supra*, in which case it was held that a taxpayer could not take as a deduction, the loss of a gain which he had not charged on or reported as income. The fact that some of the services in the *Frear* case were rendered prior to March 1, 1913, does not alter the case, even if we were to concede that this fee became worthless in 1919. No part of that fee was due and payable prior to March 1, 1913. The fee on that date was contingent upon success. If the fee had been paid in 1919, the whole of it would have been income in that year. Cf. *Woods* v. *Lewellyn*, 252 Fed. 106, and *Jackson* v. *Smietanka*, 272 Fed. 970. By the same token, the Frear fee can not be separated into two parts for the purpose of deduction.

Petitioner's last contention takes two forms: first, he relies on the doctrine of estoppel, and next, cites authorities to the effect that,

subject to limitations not necessary to be enumerated here, where one official with all the facts before him settles a controversy between a citizen and the Government, the rule of departmental procedure is that his successor in office should not reopen the matter. Without discussing the general trend of authorities, to the effect that the Government can not be estopped by the acts or representations of its agents, it is only necessary to point out that the petitioner has not shown that he has in any wise been caused to change his position for the worse or to suffer any loss by reason of the acts of respondent. Respondent has only determined that petitioner should pay a certain amount of tax. The Board has found petitioner's objections to the deficiency are untenable. Respondent has, therefore, determined that which the petitioner should have reported in the beginning.

Petitioner's second contention, even if sound, under a proper state of facts, must fall since Mr. Blair was Commissioner when the letter of June 6, 1922 was written, continued in office, and was Commissioner when the deficiency was determined.

The same contentions were advanced in *Appeal of Dallas Brass & Copper Co.*, 3 B. T. A. 856, and in *Appeal of First National Bank of Plattsburg*, 4 B. T. A. 478, and in those proceedings found to be without merit. See also *Appeal of Boyne City Lumber Co.*, 7 B. T. A. 36.

*Judgment will be entered for the respondent.*

Considered by MARQUETTE and PHILLIPS.