### TISCORNIA v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8496.

Circuit Court of Appeals, Ninth Circuit.
March 14, 1938.

A. A. Tiscornia, of San Francisco, Cal., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, Alexander Tucker, and John J. Pringle, Jr., Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

The Castle Crag Lumber Company was a California organized and operating corporation and is herein called the old company.

Between January, 1920, and December 31, 1922, petitioner herein purchased 60 shares of preferred stock in the old company at a cost of $6,000, receiving as a bonus 74 shares common stock of the company. On or about September 6, 1923, and June 12, 1924, petitioner advanced to the old company by way of "voluntary subscription" two additional sums of $4,020 each, receiving the company's promissory notes therefor, making a total investment at this time of $14,040.

In November, 1924, the corporation needed an additional $100,000 to continue operations. Some of the stockholders were unable to contribute, so on November 20, 1924, the corporation issued its notes secured by the corporation properties in the total amount of $100,000, each lender receiving a note for the amount of his loan. The notes were due November 1, 1927, and bore interest at the rate of 1 per centum per month payable semiannually. The loan was made by thirteen of the nineteen stockholders. Eleven of the thirteen lenders,

including petitioner, made loans proportionate to their stock holdings, the amount of petitioner's loan being $2,900. The other two lenders made loans of their proportionate amounts, and, in addition, the sum of $10,900, being the total of the proportionate amounts of the six stockholders who did not join in the loan.

The $100,000 loan was secured by a deed of trust on the plant and timber land of the corporation, which properties were already subject to a deed of trust in the amount of $60,000, and of which the timber land was also subject to a prior lien for the unpaid balance of the purchase price thereof.

Under the deed of trust securing the $100,000 loan, the trustee was empowered, in the event of a default in the payment of principal or interest, to sell the property at a foreclosure sale to the highest bidder, but was authorized at the request of the noteholders to announce and accept a bid on behalf of the noteholders up to the amount of the unpaid principal and interest due on the notes, and to accept notes in payment for the property. The trustee was also empowered, under the deed of trust, to organize a Nevada corporation, convey the property to it, if purchased at the foreclosure sale on the bid of the noteholders, and to receive such corporation's stock as payment therefor, said stock to be distributed to the secured noteholders in proportion to their respective holdings.

In August, 1928, the deed of trust was foreclosed and the property sold and at the sale the property was purchased by the trustee for the benefit of the noteholders, in accordance with this plan, for $151,224, principal and interest due on the secured notes, subject to the prior secured indebtedness. On September 7, 1928, the "Castle Creek Lumber Company," called herein the new company, was organized under the laws of Nevada, and the plan outlined was carried out. In exchange for the properties purchased by the trustee, the new company issued to each holder of a secured promissory note shares of stock equal in par value to the principal plus unpaid interest thereon. As the unpaid interest on the petitioner's $2,900 note amounted to $1,575.04, he received stock in the new company having a par value of $4,475.

At the time of the foreclosure sale the liabilities of the old company exceeded its assets but, of course, the old company's notes given for the "voluntary subscrip- tions" did not become liabilities against the new company, so it started business with assets exceeding its liabilities. The stockholders of the old company who had not participated in the $100,000 loan succeeded to no interest in the new company, although certain of the new company's stockholders gave their assurances that the nonparticipating stockholders would share in the proceeds after the new company paid off the $100,000 loan.

Due to the poor conditions of its business in 1929 the new company failed to pay its property taxes and the interest on its first trust loan, and in the fall of 1929 discontinued operations. By the end of 1929 the value of the assets of the new company was less than its liabilities.

In his income tax return for 1929, which was made on a "cash" basis, the petitioner claimed a deduction of $16,940 as a loss sustained during the taxable year and not compensated for by insurance or otherwise. This amount represented his original investment of $6,000 in stock of the Castle Crag Lumber Company, his two "voluntary subscriptions" of $4,020 each to that company, and the $2,900 contributed to the $100,000 loan made to that company on November 20, 1924. The respondent disallowed this deduction and determined a deficiency of $2,743.80. The Board of Tax Appeals found that the petitioner's stock in the new company became worthless in 1929; that his investment in this stock was $2,900; and that he should be allowed a deduction of this amount as a loss sustained during the taxable year. It accordingly redetermined a deficiency in the petitioner's income tax return for the year 1929 in the sum of $2,247.23. As to the remaining amount claimed as a deduction, the Board said it was a loss sustained in the year 1928.

Petitioner seeks review of that decision.

The statute governing the allowance of deductions in the computation of net income is section 23 of the Revenue Act of 1928, Act of May 29, 1928, Ch. 852, 45 Stat. 791, 799, 26 U.S.C.A. § 23 and note, which provides in part:

"In computing net income there shall be allowed as deductions: * * *

"(e) In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—(1) if incurred in trade or business; or (2) if incurred in any transaction enter-

ed into for profit, though not connected with the trade or business."

The determination of the amount of loss which may be deducted is provided for in section 113, 26 U.S.C.A. § 113 note, to which reference is made in section 23(g), 26 U.S.C.A. § 23(h) and note. Such basis is normally the cost of the property as to which loss is suffered. Section 113(b), 26 U.S.C.A. § 113 note. But in certain instances another basis is provided. The exception relevant to the present discussion is that made in section 113(a) (6), 26 U.S.C.A. § 113 note, which provides that where the property was acquired upon an exchange as described in section 112(b) to (e) 26 U.S.C.A. § 112(b to e) and note, the basis shall be the same as in the case of the property exchanged, which in the present case is the cost of the property exchanged. Since .petitioner asserts that the transaction which we have outlined above was an "exchange" within the provisions of either section 112(b) (2) or (b) (5), 26 U.S.C.A. § 112(b) (2 or 5) and note,[1] and that consequently the amount of his loss should be figured in accordance with section 113(a) (6), we are presented with the problem of determining whether the transaction was an exchange within either of the above-cited subsections. And finding, as we do, that the transaction was an "exchange" within the meaning of one of the subsections, we must also determine the cost of the property so given in exchange.

Petitioner's first contention is that there was an exchange within the meaning of section 112(b) (3) of the Revenue Act of 1928, 26 U.S.C.A. § 112(b) (3) and note.

This section provides: "No gain or loss shall be recognized if stock or securities in a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

It is obvious that section 112(b) (3) is applicable if (1) the noteholders exchanged securities[2] in the old company; (2) in pursuance of a plan of reorganization;[3] (3) for securities in the new company; (4) and both companies were parties to the reorganization.[4] Whether the trustee's part in the transaction should be ignored,[5] and the transaction considered as a direct exchange of notes for stock in the new company, as was done in Commissioner v. Kitselman, 7 Cir., 1937, 89 F.2d 458, so that section 112(b) (3) may be applied, is, we think, unnecessary to decide since the same result will be reached whether section 112 (b) (3) or (b) (5) (one of which, we believe, applicable) is applied.

Assuming that the described transaction was a reorganization, petitioner contends that he suffered no loss in 1928 (when the transfer of assets was effected), because in that year all of his various interests in the old company were exchanged for the stock in the new company. He further contends that he suffered a loss of $16,940 in 1929 when the stock in the new company became worthless because, applying section 113(a) (6), that sum represents the cost of the property (his various interests in the old company) given in exchange for the stock.

---

[1] Since the "basis" is the same regardless of which of these two subsections controls and since we think that one of them is applicable, we need not determine which should be applied. The applicability of either precludes reliance on another exception provided in section 112(g), 26 U.S.C.A. § 112 note and mentioned by petitioner.

[2] As to whether the secured notes were "securities", see: Pinellas Ice Co. v. Commissioner, 287 U.S. 462, 470, 53 S. Ct. 257, 260, 77 L.Ed. 428; Helvering v. Watts, 296 U.S. 387, 389, 56 S.Ct. 275, 80 L.Ed. 289.

[3] The term "reorganization" is defined in section 112(i) (1) of the act, 26 U.S. C.A. § 112(g) (1) note, which provision has been construed in: Pinellas Ice Co. v. Commissioner, 287 U.S. 462, 470, 53 S.Ct. 257, 260, 77 L.Ed. 428; Nelson

Co. v. Helvering, 296 U.S. 374, 377, 56 S.Ct. 273, 274, 80 L.Ed. 281; Helvering v. Minnesota Tea Co., 296 U.S. 378, 384, 56 S.Ct. 269, 272, 80 L.Ed. 284; Gregory v. Helvering, 293 U.S. 465, 469, 55 S. Ct. 266, 267, 79 L.Ed. 596, 97 A.L.R. 1355.

[4] See section 112(i) (2), 26 U.S.C.A. § 112(g) (2) note), with reference to "a party to a reorganization," which provision has been construed in Groman v. Commissioner, 302 U.S. 82, 58 S.Ct. 108, 82 L.Ed. —, Helvering v. Bashford, 58 S.Ct. 307, 82 L.Ed. —, decided January 3, 1938.

[5] See Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A. L.R. 1355, Minnesota Tea Co. v. Helvering, 58 S.Ct. 393, 82 L.Ed. —, decided January 17, 1938.

Though it be conceded that a reorganization was effected, petitioner's conclusions relative to his deductible loss are erroneous.

Petitioner's contention is apparently based on the proposition that, since the secured noteholders were also holders of unsecured notes and stock, the distribution of stock in the new company was in recognition of their interest in all three capacities —rather than in the capacity of secured noteholders alone. The plausibility of this argument is bolstered by the fact that petitioner's successive investments in the old company had on each occasion been in the same percentage to the total investment of all the investors and that consequently he was left, on the consummation of the exchange, with the same proportionate interest in the transferred assets as he had before it was effected.

■ However, we believe that it was the interest in the secured note only which was involved in the foreclosure sale, and that the other interests may be disregarded as not being involved. It is true that the trustee acted for parties who were possessed of various interests in the old company, but he acted for them only in their capacity as secured noteholders—their postreorganization interest was acquired in exchange for the secured notes alone. In legal effect the prior investments, both as represented by stock and by unsecured notes, were rendered worthless as a result of the effectuation of this plan. That the loss of the value of these notes was more than artificial is illustrated by the fact that those stock and noteholders who did not participate in the secured loan acquired no interest in the new company.

■ Our decision on this point is in accord with the rule announced in Groman v. Commissioner, 302 U.S. 82, 89, 58 S.Ct. 108, 112, 82 L.Ed. ——, and reaffirmed in Helvering v. Bashford, 58 S.Ct. 307, 82 L.Ed. ——, decided January 3, 1938. In those cases it was stated: "Where, pursuant to a plan, the interest of the stockholders of a corporation continues to be definitely represented in substantial measure in a new or different one, then to the extent, but only to the exent, of that continuity of interest, the exchange is to be treated as one not giving rise to present gain or loss." Although the word "stockholders" is used, the phrase "holders of securities" is also in-cluded, since the quoted rule is a general statement of section 112(b) (3), 26 U.S.C.A. § 112(b) (3) and note. See Helvering v. Watts, 296 U.S. 387, 389, 56 S.Ct. 275, 80 L.Ed. 289.

As we view the case, it being assumed that section 112(b) (3) is applicable, the investment in the old company represented by stock and the unsecured notes was a loss sustained in 1928, when the sale on the foreclosure was made, and should have been deducted in that year. But as to the secured note no loss was suffered until 1929, when the new company became insolvent.

Petitioner suggests that, if there was no such reorganization as will bring his case within the provisions of section 112(b) (3), none the less his loss should be calculated as provided in section 113(a) (6), because there was an "exchange" within the meaning of section 112(b) (5), in which case the basis is the same as if section 112(b) (3), 26 U.S.C.A. § 112(b) (3) and note, is applicable.[6] The provision thus referred to is: "No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange."

The "property" exchanged by petitioner for stock in the new company was, if this theory be accepted, his proportionate interest in the foreclosed assets of the new company. No loss as to this property was suffered until 1929, when the new company became insolvent. But here again petitioner did lose in 1928 the amount of his investments in the old company as represented by his stock and unsecured noteholdings since they became worthless when the old company in that year transferred its assets.

Regardless of which of the two above discussed views of the transaction is adopted, there still remains to be determined the amount of the loss realized by petitioner in 1929 when the stock of the new company became worthless.

■ Accepting the theory that there was a reorganization and that petitioner exchang-

---

[6] The basis mentioned in section 113(a) (8), 26 U.S.C.A. § 113 note, apparently applies only to the property acquired by the transferee corporation.

ed his promissory note for $4,475 par value of stock in the new company, his basis under section 113(a) (6) would be $2,900, the face value of the exchanged note, and the costs thereof.

Proceeding upon the assumption that the transaction was not a reorganization but rather a purchase and sale, then petitioner exchanged his interest in the foreclosed property for the $4,475 of stock. The cost to him of this foreclosed property would be the basis for determining his 1929 loss. We hold upon the authority of Helvering v. Midland Mutual Life Ins. Co., 1937, 300 U.S. 216, 57 S.Ct. 423, 81 L.Ed. 612, 108 A.L.R. 436, that for the purpose of the present tax calculation the cost of this property to petitioner is established by the bid price thereof at the foreclosure sale, without regard to its actual market value. In the cited case the Supreme Court held that interest was realized as income to the petitioning taxpayer when property as to which it was a mortgagee was acquired by it on a foreclosure sale for a bid price equal to the amount of the mortgage plus accrued interest thereon, and this regardless of the market value of the acquired property. In the Midland Case, as here, the bid price was paid by the giving of credit on the debt. If mortgage principal, plus interest thereon, is considered for tax purposes to be recovered when property is acquired on a bid equal to their total, then it follows that the cost of the property so acquired is for tax purposes the amount bid therefor. Certainly this is true in a case such as the one before us, where no evidence of fair market value appears in the record.

If the deduction is to be made upon the basis of $2,900—the cost of the note to petitioner—his 1929 loss could be no more than that sum and the decision of the Board is correct. If we proceed upon the basis of $4,475—the cost of the foreclosed property to petitioner—normally the 1929 loss would be that same amount. However, it does not appear from the record that the $1,575 accrued interest, realized under this theory as income in 1928, was reported as such. Where interest has not been reported as income, the amount thereof cannot be included as a loss. Voliva v. Commissioner, 7 Cir., 1929, 36 F.2d 212. This rule has

been consistently followed by the Board of Tax Appeals. Appeal of Collin, 1925, 1 B.T.A. 305; Appeal of Simons, 1925, 1 B.T.A. 351; Hayes v. Commissioner, 1927, 7 B.T.A. 936; Poor v. Commissioner, 1928, 11 B.T.A. 781; Beekman v. Commissioner, 1929, 17 B.T.A. 643; Burke v. Commissioner, 1930, 19 B.T.A. 743; Wourms v. Commissioner, 1932, 25 B.T.A. 671; Searles Real Estate Trust v. Commissioner, 1932, 25 B.T.A. 1115.

The principle running through these authorities is that there can be no loss suffered as to that which has never been acquired and that for tax purposes that which has never been reported as income (unless its gain is nontaxable) has never been acquired.

The present case falls within this principle. It is true that in each of the cited cases it was found or conceded that the amount disallowed as a deduction was never reported as income, while in our case the record is silent upon this point. But since the burden of proof is on the claimant, the failure to prove this material fact prerequisite to the allowance of a loss must result in its disallowance. Burnet v. Houston, 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991; Reinecke v. Spalding, 280 U.S. 227, 233, 50 S.Ct. 96, 98, 74 L.Ed. 385; Buck v. Commissioner, 9 Cir., 1936, 83 F.2d 786, and cases cited.

Petitioner advances the final argument that the stock and the unsecured notes of the old company did not become worthless until 1929 because the secured notes were usurious under the California law and so the old company had a claim for treble the amount of the usurious interest, and that, therefore, the old company still had assets in 1928. If such a claim existed, it would be against the noteholders, including petitioner, who received the interest. No such claim was ever asserted, and there is nothing in the record to show that it had any value from the standpoint of collectibility. Moreover, it was stipulated that in 1928 the new company took possession and control of all the assets formerly owned by the old company, so, if such a claim ever existed, it was in that year transferred with the other assets.

Decision affirmed.