## BONDHOLDERS COMMITTEE, MARLBOROUGH INVESTMENT CO., FIRST MORTGAGE BONDS, *v.* COMMISSIONER OF INTERNAL REVENUE.*

No. 128. Argued January 15, 1942.—Decided February 2, 1942.

---

*Together with No. 129, *Marlborough House, Inc.* v. *Commissioner of Internal Revenue,* also on writ of certiorari, 314 U. S. 590, to the Circuit Court of Appeals for the Ninth Circuit.

*Mr. William Z. Kerr,* with whom *Mr. Stephen V. Carey* was on the brief, for petitioners.

*Assistant Attorney General Clark,* with whom *Solicitor General Fahy* and *Messrs. J. Louis Monarch* and *Samuel H. Levy* were on the brief, for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The primary question involved in these cases is whether the transaction in question qualified as a "reorganization" under that portion of § 112 (i) (1) of the Revenue Act of 1932 (47 Stat. 169, 196) which provides: "The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of . . . substantially all the properties of another corporation). . . ."

In 1927, the Marlborough Investment Co. issued its bonds in the principal amount of $500,000. They were secured by its apartment building in Seattle and the personal property therein. There was a default in May, 1932. A bondholders' committee was formed and there were deposited with it more than 97% of the total of over $450,000 face amount of the bonds then outstanding. In view of *Helvering* v. *Alabama Asphaltic Limestone Co.,*

*ante,* p. 179, the precise mechanics whereby the reorganization was consummated are not material. Suffice it to say, that pursuant to a plan of reorganization formulated by the committee under the broad powers accorded it in the deposit agreement, there was a foreclosure and sale; the committee was the successful bidder at the price of $340,425, which was paid by the surrender of deposited bonds plus cash; Marlborough House, Inc. was formed by the bondholders; it acquired the property from the committee and issued all of its stock to the depositing bondholders; and non-assenting bondholders were paid in cash their *pro rata* share of the purchase price. In determining the income tax liability of the committee [1] for a part of 1933, and of the new corporation for a part of 1933 and for 1934 and 1935, the Commissioner used as the basis for computing depreciation the price bid at the foreclosure sale. The Board of Tax Appeals found that neither the fair market value of the deposited bonds plus the cash expended in partial payment, nor the fair market value of the property, was in excess of $340,425, at the date of the foreclosure sale or when the committee took possession. The Board held that, since the new corporation had acquired the property in connection with a "reorganization," it was entitled to use the basis in the hands of the old corporation, less depreciation. 40 B. T. A. 882. The Circuit Court of Appeals reversed. 118 F. 2d 511.

For the reasons stated in *Helvering* v. *Alabama Asphaltic Limestone Co., supra,* this transaction clearly would have been a "reorganization" within the meaning of § 112 (i) (1) but for one fact. That fact is that the prop-

---

[1] The committee took possession of the property and managed it for a part of the year 1933, prior to the date when the new corporation acquired it. The Board held that the committee was taxable as a corporation on the income received during that period by it. The committee did not petition for review of that determination by the Circuit Court of Appeals.

erty was not acquired by the committee or the new corporation from Marlborough Investment Co.[2]  In December, 1928, several years prior to the insolvency reorganization, Marlborough Investment Co., the issuer of the bonds, had transferred the property to another corporation.  As a result of *mesne* conveyances the property was held in May, 1932 by State Developers, Inc. and one Cooley.  While the foreclosure proceedings were pending, that corporation and Cooley executed and delivered a quitclaim deed to the property, in consideration of the payment of the cash sum of $10,025, which was furnished by the committee.

In view of these circumstances, there was no "reorganization" within the meaning of § 112 (i) (1).  The parenthetical part of clause A which is relevant here covers "the acquisition by one corporation" of substantially all of the properties "of another corporation."  Clause B covers certain transfers "by a corporation" of all or a part of its assets "to another corporation" where the transferor or its stockholders continue in control.  These were not "properties" of Marlborough Investment Co.  It had long since ceased to own them.  It was not the "transferor."  Furthermore, § 113 (a) (7) authorizes a carry-over of the basis of the properties [3] in the hands of the "transferor," not their basis in the hands of one who may have occupied an earlier position in the chain of ownership.  Hence it is immaterial

---

[2] Though respondent apparently did not urge this point before the Board or the court below, it may, of course, support the judgment here by any matter appearing in the record. *LeTulle* v. *Scofield*, 308 U. S. 415, 421, and cases cited.

[3] By § 114 (a), the basis upon which depreciation is allowed is the adjusted basis provided in § 113 (b) for the purpose of determining gain or loss.  By § 113 (b), such adjusted basis is the basis determined under § 113 (a).  By § 113 (a), the basis of property shall be "cost," with enumerated exceptions.  One of those exceptions is contained in § 113 (a) (7), set forth in *Palm Springs Holding Corp.* v. *Commissioner, ante,* p. 185, note 1.

that under the rule of *Helvering* v. *Alabama Asphaltic Limestone Co., supra,* the bondholders had succeeded to all of the proprietary interest in Marlborough Investment Co. The property whose basis is in controversy here was not acquired from it. Nor was there a "reorganization" as between the committee or the new corporation on the one hand and State Developers, Inc. and Cooley on the other. Cooley was an individual. The "reorganization" provisions in question cover only inter-corporate transactions. Sec. 113 (a) (8) provides for a carry-over of the basis of the properties in the hands of the "transferor" if the property was acquired by a corporation after December 31, 1920, by the issuance of its stock or securities "in connection with a transaction" described in § 112 (b) (5). Sec. 112 (b) (5) includes transfers by individuals; [4] but it requires that the transferor remain in control. Cooley and State Developers, Inc. were bought out for cash.

It is argued that, if the committee's acquisition of the properties is to be treated as a purchase rather than a "reorganization," the cost to the committee should be measured by the amount of the cash advanced by the committee, plus the face value of the deposited bonds. There is no foundation for that contention. The basis of assets bid in by a mortgage creditor on foreclosure is to be determined by the fair market value of the property. See Art. 193, Treasury Regulations 77; *Helvering* v. *New President Corp.,* 122 F. 2d 92, 96–97. Although the Commissioner used the bid price in ascertaining the basis, the Board found that the market value of the assets did not exceed that amount. Respondent therefore suggests that a re-

---

[4] Sec. 112 (b) (5) provides in part: "No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation."

mand to the Board to ascertain the fair market value is not necessary. Accordingly, the judgment below is

*Affirmed.*

MR. JUSTICE ROBERTS did not participate in the consideration or decision of this case.