E. M. WILSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. E. M. WILSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

D. E. JAPHET & CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 103909, 103910, 103968.   Promulgated March 17, 1942.

*Whitfield H. Marshall, Esq.,* for the petitioners.
*James H. Yeatman, Esq.,* for the respondent.

OPINION.

SMITH: The petitioners contend that their shares of stock in Terminal (the old company) became worthless during the taxable year 1937 by reason of the foreclosure sale of the corporation's assets, giving rise to a deductible loss under section 23 (e) of the Revenue Act of 1936. The respondent's position is that the claimed losses, in any event, are nonrecognizable for tax purposes, under the reorganization provisions of the statute, section 112 (b) (3) and 112 (g) and (h) of the 1936 Act, and, further, that the stock of Terminal did not become worthless in 1937.

The provisions of the Revenue Act of 1936 referred to above are as follows:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(e) LOSSES BY INDIVIDUALS.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

(1) if incurred in trade or business; or

(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; \* \* \*

SEC. 112. RECOGNITION OF GAIN OR LOSS.

\* \* \* \* \* \* \*

(b) EXCHANGES SOLELY IN KIND.—

\* \* \* \* \* \* \*

(3) STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

\* \* \* \* \* \* \*

(g) DEFINITION OF REORGANIZATION.—As used in this section and section 113—

(1) The term "reorganization" means (A) a statutory merger or consolidation, or (B) the acquisition by one corporation in exchange solely for all or a part of its voting stock; of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation; or of substantially all the properties of another corporation, or (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to

which the assets are transferred, or (D) a recapitalization, or (E) a mere change in identity, form, or place of organization, however affected.

(2) The term "a party to a reorganization" includes a corporation resulting from a reorganization and includes both corporations in the case of a reorganization resulting from the acquisition by one corporation of stock or properties of another.

(h) DEFINITION OF CONTROL.—As used in this section the term "control" means the ownership of stock possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and at least 80 percentum of the total number of shares of all other classes of stock of the corporation.

Considerable portions of the briefs filed in this proceeding are directed to the question whether under the facts above set forth there was a reorganization of Terminal in 1937 when the bondholders, who were likewise the principal stockholders of Terminal, acquired its assets at foreclosure sale and transferred them to the new corporation in exchange for its shares of stock. Since these briefs were filed, the United States Supreme Court on February 2, 1942, handed down opinions in *Helvering* v. *Alabama Asphaltic Limestone Co.*, 315 U. S. 179; *Palm Springs Holding Corporation* v. *Commissioner*, 315 U. S. 185; *Marlborough Investment Co.* v. *Commissioner*, 315 U. S. 189; and *Helvering* v. *Southwest Consolidated Corporation*, 315 U. S. 194. All of those cases involved questions of reorganization, either under the 1928, 1932, or 1934 Acts, on facts similar in some respects to the facts in the instant case.

We do not think, however, that the issue presented in this proceeding requires a determination of the reorganization question. Petitioners claim a loss deduction on account of their stock in the Terminal Compress & Warehouse Co. becoming worthless in the taxable year 1937. The respondent has determined that the claimed loss, if sustained, is nonrecognizable under section 112 (b) (3) because petitioners exchanged their stock in the old corporation for stock in the new corporation in a reorganization. For section 112 (b) (3) to apply, obviously, there must first be an exchange of stock for stock. There was no such exchange in the instant case. The stockholders of the old company did not exchange their old shares for shares of the new company, or for anything else. The old shares had become utterly worthless before the new corporation was formed and carried no exchange value or other rights of participation in the new company. It was only the bondholders who had that right. While it is true that a majority of those bondholders were also former stockholders of the old corporation, it was not as such stockholders, but rather as bondholders, that they participated in the new venture and received stock of the new corporation. In *Helvering* v. *Alabama Asphaltic Limestone Co.*, *supra*, the Court said:

* * * And it is clear that the fact that the creditors were for the most part stockholders of the parent company does not bridge the gap. The equity

interest in the parent is one step removed from the equity interest in the subsidiary. In any event, the stockholders of the parent were not granted participation in the plan qua stockholders.

The interests of the stockholders of the old company in the assets of the company and their investments in the stock were lost when the assets were sold at foreclosure sale for the benefit of creditors.

We have found as a fact on the evidence of record that the stock of the Terminal Compress & Warehouse Co. (the old corporation) became worthless in 1937, the year in which the foreclosure proceedings were commenced and all of its assets were sold for the benefit of creditors. We think that petitioners sustained deductible losses of their investments in the stock in that year.

*Decisions will be entered under Rule 50.*