C. D. JOHNSON LUMBER CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104938. Promulgated October 13, 1942.

874

*Everett A. Johnson, Esq.*, for the petitioner.
*John H. Pigg, Esq.*, for the respondent.

# 880

STERNHAGEN: 1. (a) The petitioner assails the partial disallowance of depletion and depreciation deductions for 1936 and 1937. It claims that the computation should be made upon the same basis as that of its predecessor, the Pacific Spruce Corporation, because, it contends, it acquired the properties in a reorganization, as defined in Revenue Act of 1934, section 112 (g) (1).[1] The essential controversy is whether the statutory definition of the term "reorganization" has been met. The case was tried and submitted before the decisions of the Supreme Court of February 2, 1942, in *Helvering* v. *Alabama Asphaltic Limestone Co.*, 315 U. S. 179; *Palm Springs Holding Corporation* v. *Commissioner*, 315 U. S. 185; *Marlborough House, Inc.* v. *Commissioner*, 315 U. S. 189; and *Helvering* v. *Southwest Consolidated Corporation*, 315 U. S. 194, and the briefs were largely devoted to the consideration of the cases which had been decided in the several Circuit Courts of Appeals and in the Board. These considerations must now be adjusted to the reasoning of the Supreme Court.

Of paramount importance is the fact that this case arises under the 1934 Act, for the difference between that statute and the earlier Act of 1928 is an important factor of the decision in the *Southwest Consolidated* case, which involved the later statute. The generalizations which have affected the reorganization decisions under the earlier acts, such as the importance of continuity of interest, are subordinate, in considering reorganizations of later years, to the express legislation which has laid down specific conditions to be literally complied with if the definition is to be applied. It is not enough, under subdivision (B) in the 1934 Act, that, underlying a transfer of property from the old corporation to the new, there is a continuing interest of the same persons—the transfer must be "in exchange solely for all or a part of [the new corporation's] voting stock." "Solely leaves no leeway." "Voting stock plus some other consideration does not meet the statutory requirement." *Helvering* v. *Southwest Consolidated Corporation, supra.* And it is not enough, under subdivision (C), that the bondholders or other creditors of an insolvent corporation should con-

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

  \*       \*       \*       \*       \*       \*       \*

 (g) DEFINITION OF REORGANIZATION.—As used in this section and section 113—

 (1) The term "reorganization" means (A) a statutory merger or consolidation, or (B) the acquisition by one corporation in exchange solely for all or a part of its voting stock; of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation; or of substantially all the properties of another corporation, or (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (D) a recapitalization, or (E) a mere change in identity, form, or place of organization, however effected.

tinue in control of the new—the continuing control must be, as prescribed in subdivision (h), by ownership of shares, *Helvering* v. *Southwest Consolidated Corporation*, *supra*; and this is not satisfied by regarding the bondholders or other creditors of an insolvent corporation as if they were the shareholders. *Helvering* v. *Southwest Consolidated Corporation*, *supra*.

In the present case, to treat the transfer to, and acquisition by, petitioner as in reorganization would be directly contrary to the 1934 statute as expounded in the *Southwest Consolidated* case. Even though the petitioner acquired the assets of the Pacific Co. (ignoring the *mesne* transfer to the Timber Co.), the acquisition was not *solely* in exchange for petitioner's shares, as subdivision (B) requires; to a large extent, it was in exchange for petitioner's promise to pay $1,669,-100, a large part of the stated price of the assets sold on foreclosure of the bonds, the remaining part being preferred and common shares of petitioner. The acquisition of the other three groups of assets was not in exchange for any shares.

Subdivision (C) is not met, because the control of the petitioner immediately after the transfer did not rest in the Pacific corporation or its stockholders or both, but rested (again ignoring the intervention of the Timber Co.) in the bondholders and preferred shareholders of the Pacific Co. Furthermore, since the petitioner's proposed future payments of $1,669,100 were to be made to the Timber Co. (which, *arguendo*, may be identified with the former bondholders who held its shares), *Le Tulle* v. *Scofield*, 308 U. S. 415, prevents recognition of a statutory reorganization; for, instead of the former bondholders becoming shareholders through the foreclosure, they continued to a large extent to be creditors. This is not, even under the earlier statute, a proprietary interest or similar to the continuing interest of actual or constructive shareholders.

It is held, therefore, that the Commissioner correctly held that the assets were not acquired by petitioner in a statutory reorganization and disallowed the deductions taken by petitioner for depreciation and depletion upon the same basis as had been applicable to the deductions of the Pacific Co.

(b) The Commissioner, after determining that petitioner had not acquired the depreciable and depletable properties in a statutory reorganization, held that the petitioner's basis for such deductions was its cost. In its petition, petitioner did not (except as affected by the reorganization issue) assail the figures which the respondent had used as bases, nor did it at the hearing propose to show by evidence what figures should be taken as cost bases .in lieu of those used by the Commissioner if it were held that no statutory reorganization had occurred. This was expressly referred to by respondent's attorney in his opening statement, and no attempt was made by petitioner,

either by amended pleading or otherwise, to establish bases other than those used by respondent. It was contended only that the refusal to recognize a reorganization and to use the predecessor's basis in computing the deductions was error, thus leaving it inferable that, if it were held that no statutory reorganization had occurred, no attack would be made upon the figures used. At that time the reorganization cases in the Supreme Court had not yet been decided and the subject of reorganization was in conflict in the lower courts; so the petitioner had no reason for assurance as to the proper basis, and if the Commissioner's computation was believed to be in error, it should have been assailed in the petition and the correct basis established by evidence. The case was tried in September 1941, and petitioner's attorney died in November 1941. The decisions of the Supreme Court in the four reorganization cases came down in February 1942. On March 9, 1942, petitioner, by new attorneys, moved for leave to file an amended petition and to reopen the proceeding at Portland, Oregon, for further testimony upon the question of fair market value of the properties. Respondent vigorously opposed these motions, showing, among other things, that the subject had been expressly mentioned at the hearing and that petitioner had failed to cover it as it might have attempted to do. After consideration of the arguments upon the motion, it was denied.

The basis and method of the Commissioner's determination do not appear clearly in the deficiency notice, and the evidence indicates that as to some of the properties book values were used, as they had also been used by petitioner in the returns. There is evidence to indicate that the books reflected figures other than cost and to some extent were made up from appraisals and contained appreciation adopted from opinions. It can not be said from the evidence that the Commissioner's determination of the deductions was in error, nor can any other figures be found as the correct figures established by the evidence. The Commissioner's determination as to the deduction applicable to each of the several units and groups of assets must, therefore, be sustained. Indeed, it is hard to conceive of any better, in view of the composite assets of various kinds and the difficulties of finding actual, or devising constructive, costs to be attributed to the separate units or groups to which depreciation or depletion is to be applied. Under the circumstances, it is easy to believe that petitioner, by its former attorney, acted upon a considered judgment in omitting to assail the determination except upon the ground of a statutory reorganization.

The Commissioner's determination of deductions for depreciation and depletion is sustained.

2. The Commissioner, in determining the deficiency, made no change in the inventory figures used by the petitioner on its returns. Peti-

tioner now claims that its inventory figures for lumber were in error and should be corrected; that for the beginning and end of each of the two years in question the figure should be based on the lower of cost or market because this was the basis which it elected to use for the inventory of its first return, and, in the absence of a permitted change in the basis, the lower of cost or market must be used in each subsequent inventory. The respondent urges that the inventory has not in fact been valued by petitioner at cost or market, whichever is lower; that no permission of the Commissioner has been asked, as a change would require, and none has been given, and that petitioner may not use the lower of cost or market.

For its opening inventory—that of December 1, 1935—petitioner used a figure of $199,695.03, based upon the unit figure of $12.40, as shown on its first return. This had been used by the predecessor receiver during the preceding five years. The figure had been constant throughout the receivership period, and had been fixed by the receiver when he took over the property in February 1931. When petitioner acquired the manufactured lumber as part of the composite group of assets for a lump sum of $700,000, it entered on its own books the same figure as had been on the receiver's books. No attempt was made at that time to ascertain the fair market value of the lumber in the inventory, nor was any effort made to relate the lumber in the inventory to the entire group of assets acquired as a means of finding the proportionate cost of the lumber. The inventory figure was merely carried over from the receiver's books, the only explanation being that the president of the new corporation, the petitioner, wanted a good showing for the first year's operations. So far as the evidence shows, there was no knowledge at that time as to whether the figure being placed on the books was in fact the lower of cost or market.

To support its contention that the figure was the lower of cost or market, petitioner caused its accountant to make a study in 1940 for the purpose of this proceeding. This, however, is not probative that an election had been made in 1936. The only probative evidence on that point is that in its return for 1936, filed in 1937, appears the following statement: "Lower of cost or market at Nov. 30, 1936, at Dec. 1, 1935, value as stated on books of receiver of predecessor company," although, as has been stated, it was entirely unknown then whether it was in fact the lower figure. Indeed, the one who prepared the return testified that it was an incorrect statement. Apparently the first effort to ascertain market value was December 1937, when the petitioner's accountant was working on the 1937 return. He made a computation which indicated to him that the net realizable proceeds on November 30, 1937, would be about $15.22 per M, and he then sought the approval of the president to use the lower of cost or market,

asked for a computation of market values, and this indicated realizable net proceeds of $15.10. The president refused to permit the change of the inventory from cost to market, because the books already showed a loss and he did not want to increase it. In the return for 1937 it was stated that the inventory was based on cost.

The petitioner's primary ground for demanding that its inventories for both years be computed at the lower of cost or market is that in its first return it stated that its inventories were valued on that basis; that this statement is the expression of an election; and that, having made the election, it is bound to and entitled to have that basis used and continued. It can not, however, be found that the petitioner in its first return elected to have its inventories valued at the lower of cost or market. It is clear from the evidence that it did not in fact make such an election, even though it stated in its 1936 return that the closing inventory was on that basis. At that time it did not know the market value on either the opening or closing date. The use of the figure of $12.40 in the opening inventory was not because it was the lower of cost or market, but because it was imported from the receiver's books, where in turn it was not a figure either of cost or market. Certainly, as to the opening figure, it can not, upon the evidence, be found that its use was an election between cost and the lower of cost or market. As to the closing inventory of 1936, said in the return to have been valued at the lower of cost or market, the evidence shows that the statement was incorrect. The figure used was an accountant's computation of average cost of production, without regard for the fact that the lumber was to a large extent acquired among the assets purchased at auction for a lump sum price of $700,000. It was purely a mathematical figure, the relation of which to cost is not shown. The same figure was used as the value of opening inventory of the following year, and in that return it is expressly stated that the inventory was valued at cost, without reference to market.

Under these circumstances, it can not be said from the evidence that market value was ever in these two years a factor in the valuation of the inventory or that petitioner elected to value its inventory at the lower of cost or market. Cf. *Rogers, Brown & Crocker Bros., Inc.*, 32 B. T. A. 307. Market value, even if it had been satisfactorily proven, is irrelevant.

Petitioner contends, however, that the opening figure of $12.40 is, in any event, not the correct cost figure applicable to it, and demands instead a figure of $15.22, which would have the effect of reducing its income for 1936 by $45,414.52. While the evidence shows that the figure of $12.40, upon which the opening inventory is valued, may not be petitioner's cost because it was simply brought onto its books

from the books of the receiver, where it had been a static inventory figure for five years, this only reaches the point where petitioner must affirmatively prove the correct cost. This, we think, it has not successfully done.

The figure of $15.22 was derived by petitioner's accountant from a larger figure of cost postulated as the cost to the receiver, irrespective of the use by the receiver of the $12.40. It is not necessary to consider whether this figure of $15.22 does fairly or accurately reflect the receiver's cost; for it is the petitioner's cost with which we are concerned in this proceeding and not that of its predecessor. As has been noted, the lumber in the inventory was acquired by petitioner among the assets which as a whole cost it $700,000. Since the acquisition was not in a reorganization and the predecessor's cost does not carry over into the succeeding owner's basis, the petitioner is bound to use its own cost, which is found in its purchase price of all the assets. The portion of that price which is properly to be regarded as the cost of any particular part of the assets may conceivably be determined in various ways upon evidence directed to that fact; but it seems clear that it is not established by a retrospective determination of an adjusted cost of production of the preceding owner in the preceding year.

As to the proper part of the petitioner's cost of $700,000 to be allocated to the lumber inventory, the evidence affords no answer different from or better than the $199,695.03. No other finding could be made which would be supported by the evidence, and we therefore sustain the use of that figure as the opening inventory for the 1936 determination.

Since the inventory is not properly determinable with reference to market values and such values are not a factor, the petitioner's claim that its closing inventory for 1937 should be reduced from the book value of $17.69, which it used and which the Commissioner adopted without change, to $15.10, a constructed market value, must be denied, irrespective of the method by which such market value figure was determined.

On the entire lumber inventory question, we hold that the evidence supports no ground for using figures different from those used on the returns and the deficiency determination.

*Decision will be entered under Rule 50.*