## CUSHMAN MOTOR WORKS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12273.

Circuit Court of Appeals, Eighth Circuit.

Oct. 19, 1942.

Rehearing Denied Nov. 6, 1942.

Harold J. Requartte, of Lincoln, Neb. (Thomas S. Allen, of Lincoln, Neb., on the brief), for petitioner.

Helen R. Carloss, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Samuel H. Levy, and Arthur A. Armstrong, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

Pursuant to its findings of fact and opinion the United States Board of Tax Appeals on October 23, 1941, rendered a decision (44 B.T.A. 1288) redetermining deficiencies in the income tax and excess profits tax of The Cushman Motor Works, a Nebraska corporation, petitioner herein, for the taxable years ended July 31, 1935 and 1936, in the respective amounts of $11,278.34 and $1,191.87.

In 1934 petitioner acquired certain personal property assets formerly owned by Cushman Motor Works (herein called Motor Works), a dissolved Nebraska corporation, of the stipulated value of $16,146.76. The property had been bid in by C. D. Ammon, a stockholder in both corporations, at a sheriff's sale upon execution under a

judgment against Motor Works in favor of Ammon. In its income tax returns for the taxable years petitioner used for inventory and depreciation purposes the basis applied when the property was owned by Motor Works. This basis was disallowed by the Commissioner, depreciation was adjusted to the stipulated value, the Board sustained the Commissioner, and the taxpayer has petitioned for review.

The petitioner contends that the Board erred for the reason that the transactions by which it acquired the assets were part of a plan of statutory reorganization of the corporations under § 112(b) (3) and (4) and (g) and (h) of the Revenue Act of 1934, c. 277, 48 Stat. 680, 704, 26 U.S.C.A. Int.Rev.Acts, page 692.

The provisions of the statute relied upon by the petitioner to establish its claim of reorganization are copied in the margin.[1] The Board found the facts to be that Motor Works had been dissolved about 17 months before petitioner was organized and acquired the property which is the subject of the claimed depreciation, and that Motor Works ceased to exist long before the plan which resulted in the organization of petitioner was finally agreed upon. The Board held accordingly that Motor Works was not and could not be a party to any reorganization to which petitioner was or might have been a party. Upon this theory the deficiency found by the Commissioner was sustained.

In his brief in this court the Commissioner ignores the theory upon which the Board decided the case and argues that the decision should be affirmed on the ground that the facts do not establish a reorganization within the meaning of subsection (g) (1) (C) or (E) relied upon by petitioner.

▮ The decision must be affirmed here if either theory is supported by the facts appearing in the record, Bondholders Committee v. Commissioner, 315 U.S. 189, 192 (Footnote 2), 62 S.Ct. 537, 86 L.Ed. 784; LeTulle v. Scofield, 308 U.S. 415, 421, 60 S.Ct. 313, 84 L.Ed. 355, even though the Board "relied upon a wrong ground and gave a wrong reason." Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224.

The petitioner argues in substance that the Board's decision is based upon error in that: (1) Under the laws of Nebraska a dissolved corporation may be a party to reorganization under the statute, and (2) in this instance the dissolution of Motor Works was but a step or integrated part of a single scheme or plan of reorganization and that, therefore, the legal effect of the dissolution under Nebraska law is immaterial.

In support of the first branch of the argument petitioner relies entirely upon its own interpretation of the Nebraska statute and the decision of the Supreme Court of Nebraska in Schmidt & Bro. Co. v. Mahoney, 60 Neb. 20, 82 N.W. 99. Section 24-220, Comp.Stat.Nebr.1929, reads: "Corporations whose charters expire * * * by the voluntary act of the stockholders, may continue to act for the purpose of

---

1 "§ 112. Recognition of Gain or Loss

* :: * * *

"(b) Exchanges Solely in Kind—

* * * * *

"(3) Stock for stock on reorganization. No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

"(4) Same—Gain of corporation. No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

* * * * *

"(g) Definition of Reorganization. As used in this section and section 113—

"(1) The term, 'reorganization' means

* * * (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, * * * or (E) a mere change in identity, form, or place of organization, however effected.

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of a reorganization resulting from the acquisition by one corporation of stock or properties of another.

"(h) Definition of Control. As used in this section the term 'control' means the ownership of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation."

closing their business, but for no other purpose." Section 24-107 provides: "Upon the dissolution * * * of any corporation * * * the directors * * * acting last before the time of its dissolution, * * * shall be the trustees of the creditors and stockholders of the corporation dissolved, and shall have full power to settle the affairs of the same, collect and pay the outstanding debts, and divide among the stockholders the moneys and property that shall remain, in proportion to the stock of each stockholder paid up * * *." Other provisions authorize the trustees to sue "by the name of the trustees of such corporation, describing it by its corporate name", and provide that no suit against a corporation shall abate in consequence of such dissolution.

The case of Schmidt & Bro. Co., supra, does not aid us in construing the statute. That case holds merely that a suit brought in the Nebraska courts by a dissolved Ohio corporation in the course of winding up its affairs cannot be abated under the Nebraska Code of Civil Procedure.

■■ The general effect of statutes extending the life of a dissolved corporation is stated in 13 Am.Jur. § 1366, p. 1206, as follows: "The extension allowed by statute for the winding up of dissolved corporations implies a continuation of their corporate existence in a qualified manner only and within the strictly limited powers and purposes as provided in the statutes." In Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp., 302 U.S. 120, 124, 58 S.Ct. 125, 127, 82 L.Ed. 147, the Supreme Court said: " * * * a private corporation in this country can exist only under the express law of the state or sovereignty by which it was created. Its dissolution puts an end to its existence, the result of which may be likened to the death of a natural person. There must be some statutory authority for the prolongation of its life * * *." In Moss v. Kansas City Life Ins. Co., 8 Cir., 96 F.2d 108, 114, this court said: "When a corporation is dissolved, it is, absent statutory exceptions, for all purposes dead as a legal entity or personality." No statutory exceptions in Nebraska giving to a dissolved corporation authority to be a "party" to a "reorganization" within the meaning of § 112(g) (2) of the Act have been called to our attention, and we find none.

The second branch of petitioner's argument in opposition to the theory upon which the Board based its decision is that the dissolution of Motor Works and the sheriff's sale of the personal property assets involved were "no more than intermediate procedural devices utilized to enable the new corporation [petitioner] to acquire all the assets of the old one [Motor Works] pursuant to a single reorganization plan." Helvering v. Alabama Asphaltic Limestone Co., 315 U.S. 179, 185, 62 S.Ct. 540, 86 L.Ed. 775. This contention is contrary to the findings of the Board. The plan to organize petitioner to take over the assets of Motor Works in exchange for stock was not conceived, as the Board found, until after both of these important events had occurred. Petitioner contends that the reorganization proceedings were instituted long prior to the occurrence of either event.

The facts found by the Board, and supported by abundant evidence, are that Motor Works was in financial difficulty in 1931. Ammon having acquired a controlling interest in its stock, in December, 1932, proposed a plan of merger of Motor Works, Easy Manufacturing Co., and the McGrew Machine Co. The Easy Manufacturing Co. was a partnership consisting of Ammon and his brother. The proposal was rejected and on February 25, 1933, notice was sent to the stockholders of Motor Works calling a special meeting for March 6, 1933, "for the purpose of either: Reorganizing and raising among the stockholders at least $65,000.00 or dissolving and liquidating the corporation." At that meeting the stockholders by a vote of more than two-thirds majority resolved that

"Whereas the Cushman Motor Works has lost money during most of the past twelve years, and

"Whereas the Company has practically no working capital, and,

"Whereas, there are no funds now available to meet the current liabilities,

"Therefore, Be It Resolved by these stockholders here assembled that the corporation be dissolved; that the directors be instructed to sell the assets of the corporation of whatsoever nature, wind up the affairs of the corporation and distribute the remaining assets to the stockholders as provided by the articles of incorporation and the by-laws, and as provided by the laws of the State of Nebraska.

"Be it further resolved that the officers of the Company file with the Secretary of State a report of said dissolution as required by law."

Thereafter the directors advertised and endeavored to sell the corporation's assets without success.

On August 1, 1933, Ammon obtained a judgment against Motor Works, and at sheriff's sale on May 16, 1934, all of Motor Works' personal property was sold for $16,-243.65. Except for a few items aggregating $53.60, Ammon was the purchaser.

Through the efforts of Ammon, petitioner was organized on August 21, 1934, and on the following day a contract was executed embodying a plan for financing the new corporation and operating the plant and business formerly owned by Motor Works. The assets of the corporation were at that time in the possession of and in process of administration by the trustees whose duties it was under the statute, supra, to pay the debts of the corporation and distribute what was left to the stockholders. The parties to the contract were petitioner, The Cushman Corporation, and Motor Works, "a dissolved corporation". It was signed also by the trustees. By the terms of the contract petitioner assumed the indebtedness of Motor Works in the amount of $8,846.46, issued stock in payment of other claims, and settled with the stockholders of the old corporation for stock in petitioner or for cash. Ammon turned in the personal property acquired by him at the sheriff's sale for stock.

All the parties to the contract recognized the status of Motor Works at that time. The contract itself recited:

"Whereas, the stockholders of Cushman Motor Works, on or about March 6th, 1933, by a vote of more than a two-thirds majority, dissolved said corporation and directed that the assets of said corporation be liquidated, and

"Whereas, the trustees of the third party, who were the directors and managers of the affairs of said corporation at the time of its dissolution have upon several occasions attempted to sell and dispose of the assets of said corporation at public and private sale and have not heretofore received any satisfactory offer for said assets. * * *"

All these transactions demonstrate the soundness of the Board's conclusion.

The dissolution of Motor Works was not intended to be a step in a reorganization; it was intended to be a dissolution of its corporate powers and a statutory liquidation, which "is the antithesis of reorganization." Mascot Stove Co. v. Commissioner, 6 Cir., 120 F.2d 153, 156, certiorari denied 315 U.S. 802, 62 S.Ct. 630, 86 L.Ed. ——. The organization of the petitioner is not mentioned in the dissolution proceedings. Motor Works was, therefore, dead prior to the conception of petitioner; no steps were ever taken to revive it; and no provision of the Nebraska statutes authorizing a revivor of a dissolved corporation has been called to our attention. While the trustees continued to operate the plant after the dissolution, this was done for the express purpose of selling the assets as a going concern.

It is equally impossible to bring the transaction within the meaning of § 112(g) (1) (C) or (E). Clause C covers transfers "by a corporation" of all or a part of its assets "to another corporation", and clause E covers a "mere change in identity, form, or place of organization, however effected." Motor Works was not the "transferor" of the personal property which is the basis of the controversy in this case. In addition to being dead and incapable of such a corporate act, Motor Works was not even the owner of the property; Ammon was the owner. He had the right to dispose of it as he chose after acquiring title at the sheriff's sale. "The 'reorganization' provisions in question cover only inter-corporate transactions", Bondholders Committee v. Commissioner, 315 U.S. 189, 193, 62 S.Ct. 537, 540, 86 L.Ed. 784, not a transaction between the new corporation and an owner by mesne conveyance from the old corporation. Neither a partnership nor an individual can be a "party" to a reorganization. Bondholders Committee v. Commissioner, supra. The effect of the contract of August 22, 1934, was to permit petitioner and Ammon, with the consent of the trustees, to pay the debts of Motor Works, settle with its stockholders individually and to take over its assets. This was only a method of liquidation of Motor Works and not a reorganization.

Clause E does not apply because "a transaction which shifts the ownership of the proprietary interest in a corporation is hardly 'a mere change in identity, form, or

place of organization' within the meaning of clause (E)." Helvering v. Southwest Consolidated Corporation, 315 U.S. 194, 202, 62 S.Ct. 546, 552, 86 L.Ed. 789.

Affirmed.