## COON RUN FUEL CO.
### v.
## COMMISSIONER OF INTERNAL REVENUE.
### No. 11143.

United States Court of Appeals Third Circuit.

Argued Dec. 15, 1953.

Decided Jan. 14, 1954.

Herman M. Buck, Uniontown, Pa. (George W. Tanner, Jr., Ray, Coldren & Buck, Uniontown, Pa., on the brief), for appellant.

Joseph F. Goetten, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, Harry Baum, Sp. Assts. to Atty. Gen., on the brief), for appellee.

Before MARIS, GOODRICH and Mc-LAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves the basis to be used in determining for tax purposes petitioner's gain or loss from sale of its coal land. Petitioner used the cost of the land to a predecessor corporation. The Tax Court held that the correct basis was the purchase price paid for the land at a judicial sale. Coon Run Fuel Company v. Commissioner, 20 T.C. ——. If the transaction, or series of transactions,

by which the taxpayer acquired the land can rightly be called a "reorganization" within the appropriate statutory provisions,[1] there is no liability for the deficiencies which have been assessed.

The facts found by the Tax Court are fully reported in the opinion just cited. Only the essentials will be repeated. LaFayette Coal and Coke Company, a West Virginia corporation, acquired the land in question, its sole asset, in 1907–1908 for the recited consideration of $163,-965.00.[2] LaFayette was not an operating company; it merely held the land and paid the annual real estate taxes by means of assessments on its stockholders. After 1926, some shareholders failed to pay these assessments and the corporation was without funds to pay its taxes. As a result, the property was forfeited to the State of West Virginia in 1929, and thus became subject, according to the provisions of West Virginia law, to sale for benefit of the State school fund. Thereafter, petitioner Coon Run Fuel

Company, also a West Virginia corporation, was formed by some of the LaFayette shareholders who paid an assessment on their LaFayette shares to Coon Run and surrendered those shares for an equal number in the new corporation. The money raised by this assessment was used to purchase the coal land from the State for $700 and expenses of the sale. This was but a small fraction of the delinquent taxes. Until the judicial sale, LaFayette admittedly retained the right to petition to redeem the land by payment of the delinquent taxes. At this sale, Velma Hudoc, an employee of Alan D. Williams, the Secretary-Treasurer of both corporations, took title and later conveyed to Coon Run.

■■ The Tax Court found as a fact that Mrs. Hudoc took the title to the land on behalf of Coon Run. This crucial finding is challenged by the taxpayer, and must be examined. The record is rather confusing. There was no stipulation on the point. Mrs. Hudoc was the

---

1. Section 113(a) (7) (12) of the Internal Revenue Code and section 112 (i) (1) of the Revenue Act of 1932 are the applicable statutes:

"The basis of property shall be the cost of such property; except that—

    *     *     *     *     *

"(7) *Transfers to Corporation.* If the property was acquired—

"(A) after December 31, 1917, and in a taxable year beginning before January 1, 1936, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them, or

"(B) in a taxable year beginning after December 31, 1935, by a corporation in connection with a reorganization,

then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. * * *

"(12) *Basis established by Revenue Act of 1932.* If the property was acquired, after February 28, 1913, in any taxable year beginning prior to January 1, 1934, and the basis thereof, for the purposes of the Revenue Act of 1932, 47

Stat. 199, was prescribed by section 113 (a) (6), (7), or (9) of such Act, then for the purposes of this chapter the basis shall be the same as the basis therein precribed in the Revenue Act of 1932." 26 U.S.C.A. § 113(a).

"(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred * * *." 47 Stat. 169, 198 (1932), 26 U.S.C.A.Int. Rev.Acts page 513.

The Revenue Act of 1934, 48 Stat. 680, 26 U.S.C.A.Int.Rev.Acts, page 659 et seq., is also applicable but its pertinent provisions are identical with those of the Act of 1932.

2. The argument for the Commissioner claims that this recital of consideration is insufficient to establish the cost to LaFayette, even if Coon Run is entitled to LaFayette's figure as its own base. We do not reach this question.

only witness, Williams having died before the litigation arose. She testified that she acted on behalf of LaFayette. However, she admitted that her recollection was hazy; and she seemed to have no understanding of the separate legal identities of the two organizations. For example, she testified that LaFayette and Coon Run together "make up the corporation." But the letter of October 2, 1931, addressed by Williams to the LaFayette shareholders, indicates that the plan was that Coon Run, not LaFayette, buy the land. More importantly, Williams derived his authority to buy the land (through Mrs. Hudoc) from a resolution passed by the Coon Run shareholders at the annual meeting of that corporation on October 15, 1931. The resolution states that LaFayette had owned the property, that it then belonged to the State, that the land was necessary for the purposes of Coon Run, and that Williams, the Secretary-Treasurer of Coon Run, was authorized to buy it. We agree with petitioner that the foregoing statements are not material to the issue of whether the land did in fact belong to the State, but they are relevant to demonstrate the intent of Williams, the moving force in the matter, that Coon Run be the purchaser. It is noteworthy also that Williams instructed the LaFayette shareholders that the checks for the assessment which made the purchase possible be made payable to Coon Run. It is true that LaFayette joined in Mrs. Hudoc's conveyance to Coon Run. But, certainly, in view of the facts just discussed, this conveyance does no more than illustrate that Williams was being exceedingly careful to see that Coon Run got a clear title. We see, therefore, no reason to disagree with the conclusion reached by a trier of fact whose findings are not to be disturbed unless clearly erroneous.

Petitioner argues that, although LaFayette did not redeem the land before the sale, the purchase by Mrs. Hudoc constituted a redemption by operation of law. We are referred to West Virginia statutes and cases governing the rights of a former owner as purchaser at a tax sale. But here the former owner, LaFayette, did not purchase the land; Coon Run bought it.

▮ We come now to the question of whether there has been a reorganization within the terms of the statutes previously cited. The Commissioner argues that part B of section 112(i) (1) of the Act of 1932 is inapplicable because it deals with "a transfer by a corporation * * to another corporation" and here Coon Run's transferor was the State of West Virginia, not LaFayette. Similarly, the Commissioner maintains that part A is inapplicable because it concerns "the acquisition by one corporation of * * * substantially all the properties of another corporation" and Coon Run has acquired the property of the State of West Virginia, not that of LaFayette.

We agree with both contentions. We assume that LaFayette could have redeemed the property until the time of sale. Also, even though the land was forfeited in 1929, it appears that the State continued to assess real estate taxes against LaFayette until 1931. Therefore, as the Commissioner conceded in argument, the nature of the State's interest in the land before the sale is not crystal clear. However, it is clear from the statute that title was in the State at time of sale and that the former owner's right of redemption was cut off when the sale received judicial confirmation.[3] Coon Run did, then, buy from the State.

---

3. "The former owner, his heirs, devisees or assigns, of any real estate forfeited for any cause to the State of West Virginia, may at any time during the pendency of the suit for the sale thereof, and before a decree for the confirmation thereof has been made and entered by the court, file his petition therein in manner and form as provided in the next preceding section in relation to the excess of the proceeds of such sale, praying to be allowed to redeem so much only of such real estate as to which the title still remains in the State; and upon the filing of such petition, and upon such proof being made as would entitle the petition-

Petitioner urges the principle that the old corporation need not be the immediate transferor when the intermediate party is merely a procedural means through which the new corporation acquires the assets of the old. We are directed to Helvering v. Alabama Asphaltic Limestone Co., 1942, 315 U.S. 179, 62 S. Ct. 540, 86 L.Ed. 775; Palm Springs Holding Corp. v. Commissioner, 1942, 315 U.S. 185, 62 S.Ct. 544, 86 L.Ed. 785; Rex Mfg. Co. v. Commissioner, 7 Cir., 1939, 102 F.2d 325, and similar decisions. In all these cases, however, the intermediary was either a nominee or a creditors committee whose *raison d'être* was the transfer of the assets from the old corporation to the new, or, at any rate, the salvaging of the assets of the old corporation in some manner. In the present situation, the State of West Virginia was certainly no such implement. Its interest was neither a transfer to Coon Run, nor a salvaging of an investment in LaFayette. On the contrary, its interest was recoupment of the delinquent taxes, the very thing the shareholders were attempting to avoid.

In our opinion the situation is analogous to that in Bondholders Committee v. Commissioner, 1942, 315 U.S. 189, 62 S.Ct. 537, 86 L.Ed. 784, decided the same day as Helvering v. Alabama Asphaltic Limestone Co., supra. In the Bondholders case, the old corporation conveyed to strangers who later conveyed to the creditors committee. Conforming to the Limestone case, the Court stated that the

fact that the property was conveyed to this committee, rather than to the new corporation, did not exclude the transaction from the statute. But it held that the statute "authorizes a carry-over of the basis of the properties in the hands of the 'transferor,' not their basis in the hands of one who may have occupied an earlier position in the chain of ownership." 315 U.S. at page 192, 62 S.Ct. at page 540, (footnotes omitted).

The decision of the Tax Court will be affirmed.

---

er to the excess of the purchase money of such real estate if the same had been sold, the court may, by a proper decree, permit the petitioner upon the payment into court, or to the commissioner of school lands, the costs, taxes and interest properly chargeable thereon, to be fixed by the court in its decree, to redeem the real estate mentioned in his petition. And upon such payment being made as aforesaid, the court shall enter its decree declaring the redemption of such real estate by such petitioner, so far only as the title thereto is in the State, as provided in this chapter, and so far as the petitioner has shown himself entitled to redeem the same; which decree shall operate as a release of such forfeiture of such real estate to the extent declared therein, and of all former taxes and interest charged and chargeable thereon. And such petitioner shall acquire no other title to the land so redeemed than was vested in him immediately before such forfeiture, but such redemption shall in nowise affect or impair any right, title or interest any other person may have in such real estate or any part thereof, by purchase from the State, or under and by virtue of section three, article thirteen of the Constitution of this State." W.Va.Code c. 37, Art. 3, § 29 (1931).