**COMMUNITY BANK,**
**Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 86–7424.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 8, 1987.

Decided June 16, 1987.

Thomas G. Bost, Los Angeles, Cal., for petitioner-appellant.

Steven W. Parks, Washington, D.C., for respondent-appellee.

Before SCHROEDER, PREGERSON and O'SCANNLAIN, Circuit Judges.

SCHROEDER, Circuit Judge:

The appellant taxpayer is a commercial bank which held mortgages on certain real estate. It asks us to hold that the Tax Court erred in allowing the Commissioner to prove values for the properties greater than the bid prices paid by the taxpayer at nonjudicial foreclosure sales conducted in accordance with California law. The appeal concerns Treasury Regulation 1.166–6, which creates a presumption that the bid price is equal to the fair market value "in the absence of clear and convincing proof to the contrary." 26 C.F.R. § 1.166–6(b)(2) (1986).

This regulation, or a predecessor phrased in substantially the same terms, has been in effect for more than fifty years. *See* Treas.Reg. 77, Art. 193, promulgated under the Revenue Act of 1932, § 22(a), ch. 209, 47 Stat. 169. *See also Nichols v. Commissioner*, 141 F.2d 870, 872 n. 1 (6th Cir.1944) (quoting language of predecessor regulation). Courts consistently have interpreted the regulation to permit the Commissioner to introduce evidence of the actual market value of the property to rebut the presumptive market value of the bid price. *See, e.g., Bondholders Committee v. Commissioner*, 315 U.S. 189, 193–94, 62 S.Ct. 537, 540, 86 L.Ed. 784 (1942); *Helvering v. New President Corp.*, 122 F.2d 92, 97 (8th Cir. 1941); *Commissioner v. West Production Co.*, 121 F.2d 9, 12 (5th Cir.), *cert. denied*, 314 U.S. 682, 62 S.Ct. 186, 86 L.Ed. 546 (1941); *Hadley Falls Trust Co. v. United States*, 110 F.2d 887, 892 (1st Cir.1940); *Brown v. United States*, 95 F.2d 487, 489 (3rd Cir.1938); *Community Bank v. Commissioner*, 62 T.C. 503, 507–08 (1974). Thus, the Tax Court followed a virtually unbroken line of authority holding that the regulation validly authorizes such rebuttal. We affirm.

The facts are simple. During 1975 and 1976, Community Bank foreclosed on four mortgages and purchased the properties at public auctions by making the highest bids. In each case, the bank's bid price was substantially less than the outstanding mortgage debt, and the balance of the debt was uncollectable. Thus, on its income tax returns, the bank claimed bad debt deductions for the difference between the mortgage debts and the bid prices. The bank, however, did not report any gain from the foreclosures because it reasoned that the bid prices were equal to the fair market values on the dates of sale. The Commissioner found that the fair market values of the properties were much higher than the corresponding bid prices and, accordingly, treated the differences as taxable gain. The Tax Court sustained the income tax deficiencies after allowing the Commissioner to present the rebuttal evidence.

The bank relies on California law, specifically *Smith v. Allen*, 68 Cal.2d 93, 436 P.2d 65, 65 Cal.Rptr. 153 (1968) and *Sumitomo Bank v. Taurus Developers, Inc.*, 185 Cal. App.3d 211, 229 Cal.Rptr. 719 (1986), which, the bank argues, hold that the bid price

paid for property at a regularly conducted foreclosure sale is determinative of the property's value. The bank contends that these cases should control the valuation of the property for federal tax purposes. It also relies on Cal.Civ.Code § 2924 *et seq.* (West 1986), which specifies procedures for mortgage foreclosures. Under the bank's theory, the only evidence admissible to rebut the presumption established by the Treasury Regulation would be evidence that the sale was not properly conducted pursuant to this statute.

The authority cited by Community Bank, however, is wholly unrelated to federal tax law. *Sumitomo* stands for the proposition that a lender who pursues a nonjudicial foreclosure remedy is not entitled to a deficiency judgment based on the difference between the foreclosure sale proceeds and the outstanding indebtedness. 229 Cal. Rptr. at 722. Similarly, in *Smith,* where the value of the property at the time of the nonjudicial foreclosure sale was more than the unpaid balance of the underlying debt, the borrowers were not entitled to restitution of payments made toward the purchase price. 68 Cal.2d at 95–96, 436 P.2d at 66–67, 65 Cal.Rptr. at 154–55. Thus, the valuation language in these cases clearly refers to the final adjudication of rights as between the borrower and the lender. Such valuation is not conclusive for federal tax purposes.

There is, moreover, nothing in the history of the Treasury Regulation to indicate that the nature of the rebuttal evidence is to be controlled by state law. The bank cites instances, particularly in the partnership area, where state statutes may influence federal tax obligations. *See* Treas. Reg. 1.704–1(b)(2)(ii)(c) (referring to state or local law). State law controls, however, "only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law." *Burnet v. Harmel,* 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199 (1932). Here, nothing in Treasury Regulation 1.166–6 makes its operation depend upon state law.

The bank also argues that the Supreme Court's decision in *Helvering v. Midland Mutual Life Insurance Co.,* 300 U.S. 216, 57 S.Ct. 423, 81 L.Ed. 612 (1937), requires us to hold that the bid price is conclusive as to value. That case, however, did not involve the regulation at issue here. The First Circuit appropriately distinguished *Midland* in the following terms:

> The only question before the court in that case [*Midland*] was whether an insurance company should include in its gross income, as interest, the amount of interest included in the bid price for real estate acquired by it at foreclosure sale, the fair market value being less than the bid price. The court held that the interest was taxable income.
>
> We do not see how this holding sheds any light on the question of authority of the Commissioner to provide by regulation for the ascertainment of gain or loss in those cases within the reach of Regulation 193. In the case of *Helvering v. Midland Mutual Life Ins. Co., supra,* the court was not dealing with the validity or applicability of any regulation similar to Regulation 193.

*Hadley Falls,* 110 F.2d at 892 (discussing predecessor regulation). Although this circuit has never directly discussed the application of *Midland* to Treasury Regulation 1.166–6, other circuits put the issue to rest four decades ago in cases arising out of the Great Depression. *See, e.g., Nichols,* 141 F.2d at 873–76; *Hadley Falls,* 110 F.2d at 892. As the Tax Court stated below, "*Midland* does not preclude inquiry as to the [true] fair market value of the property foreclosed." 79 T.C. 789.

Our own decision in *Tiscornia v. Commissioner,* 95 F.2d 678 (9th Cir.1938), is not to the contrary. There, we stated, relying upon *Midland,* that a mortgagee's tax basis in property acquired at a foreclosure sale was equal to the bid price without regard to its actual market value. *Id.* at 683. We qualified that conclusion, however, by adding: "Certainly this is true in a case such as the one before us, where no evidence of fair market value appears in the record." *Id.* In *Tiscornia,* therefore, the fair market value was not shown to

differ from the bid price, and we recognized that evidence might be introduced to establish such a difference. In addition, we could not interpret *Tiscornia* as support for the bank here without conflicting with the clear statement of the Supreme Court four years later in *Bondholders* that "[t]he basis of assets bid in by a mortgage creditor on foreclosure is to be determined by the fair market value of the property." 315 U.S. at 193, 62 S.Ct. at 540 (citing predecessor Treas.Reg. 77, Art. 193; *New President*, 122 F.2d at 97, which held that, by the express terms of the regulation, the bid price was not conclusive evidence of value).

We hold, therefore, that the Commissioner was entitled to present evidence of actual market value to rebut the presumption created by Treasury Regulation 1.166–6 that the bid price is equal to the fair market value.

AFFIRMED.