[L. A. No. 29526. In Bank. Jan. 23, 1968.]

MAY EMERSON SMITH et al., Plaintiffs and Appellants,
v. DEANE ALLEN et al., Defendants and Respondents.

Clifford W. Twombly for Plaintiffs and Appellants.

Rutan & Tucker, John B. Hurlbut, Jr., and Herbert W. Walker for Defendants and Respondents.

Paul E. Homrighausen, Noel W. Nellis, Morrison, Foerster, Holloway, Clinton & Clark and Robert D. Raven as Amici Curiae on behalf of Defendants and Respondents.

McCOMB, J.—Plaintiffs appeal from a judgment of dismissal entered after a general demurrer was sustained to their amended complaint seeking damages for unjust enrichment in a transaction involving the sale of residential property to them by defendants, the latter having reacquired the property in foreclosure proceedings.

*Facts*: On August 15, 1963, plaintiffs and defendants executed an instrument labeled ''Real Estate Option,'' under which plaintiffs agreed to purchase, for a total consideration of $145,000, certain residential property owned by defendants. At the time of the execution of the agreement, plaintiffs paid $5,000 toward the purchase price and took possession of the property.

Defendants agreed to convey the property to plaintiffs on February 1, 1964, provided plaintiffs made certain additional payments on the purchase price, totaling $25,000 ($5,000 on October 1, 1963, $10,000 on November 1, 1963, $5,000 on December 1, 1963, and $5,000 on January 1, 1964), paid $4,193 (apparently interest) on February 1, 1964, and executed a promissory note for the balance of the purchase price ($115,000) and a first deed of trust on the property. By its terms, the promissory note was to bear interest at 7 percent and was payable at the rate of $900 per month, beginning March 1, 1964.

On February 1, 1964, plaintiffs having fulfilled the conditions hereinabove set forth, defendants conveyed the property to them.

During the period in which they were in possession of the property (slightly over 21 months), plaintiffs allegedly made certain repairs at a cost of $2,239.42[1] and certain improvements at a cost of $17,439.74.[2]

---

[1]According to the allegations of plaintiffs' amended complaint, the following amounts were spent for repairs: $685 for repairs to the cesspool, $204.22 for repairs to the swimming pool, $1,150.20 for repair and bracing of ceilings, and $200 for painting.

[2]According to the allegations of plaintiffs' amended complaint, the following amounts were spent for improvements: $1,500 for revamping and remodeling of the electrical system, $439.60 for revamping and re-

Plaintiffs paid the 1963-1964 taxes, in the sum of $989.38, and made the first nine of the $900 monthly payments due by the terms of the promissory note ($8,100). They then defaulted, allegedly being "without funds, assets or credit from which to make any further payment."

Thereafter, defendants commenced foreclosure proceedings, which culminated in a trustee's sale on May 6, 1965. At that time, the property was sold and conveyed to defendants, who obtained possession from plaintiffs on May 27, 1965.

Plaintiffs allege that the value of the property at the time defendants reacquired it at the trustee's sale was not less than the contract price plus the cost of the repairs and the improvements (a total of $164,679.16); that the reasonable rental value for the period of their occupancy was at the rate of $750 per month, or a total of $16,140; that the total amount of moneys expended by them was $62,961.54; and that they have been damaged, and defendants have been unjustly enriched, by the difference, or the amount of $46,821.14. They ask judgment in that amount.

■ Question: *If a vendor of real property forecloses a deed of trust given to secure the vendee's purchase money note and bids in the property at the foreclosure sale, which is regular in form, and the value of the property at that time is more than the unpaid balance of the underlying debt, is the vendee entitled to restitution of payments made toward the purchase price of the property and moneys expended for repairs and improvements, less the rental value of the property for the period of his occupancy?*

*No.* In *Freedman* v. *Rector etc. of St. Matthias Parish,* 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1], we held that a vendee was entitled to restitution of a $2,000 down payment (less a $900 real estate commission and the expenses of sale) made by him under a contract for the sale of land for $18,000, the vendor having resold the land for $20,000 after the vendee wilfully defaulted. In that case, however, the defaulting vendee had never received title, and the contract of sale was therefore an executory one. (See also *Caplan* v. *Schroeder,* 56 Cal.2d 515 [15 Cal.Rptr. 145, 364 P.2d 321].)

■ Where, as in the present case, the vendor has conveyed the property to the vendee and has taken back a deed of

modeling of the kitchen, $2,246.14 for installation of fencing around the property, and $13,254 for construction of an additional house.

trust which secures the vendee's purchase money note, the contract of sale has been executed, since the object of such a contract is to effectuate a transfer of title. (See Civ. Code, § 1661.) Under such circumstances, upon default by the vendee the rights of the parties are determined by the statutory provisions respecting foreclosures.

Since the rights of a vendee who defaults under an executory land sale contract are entirely unregulated by statute, such a vendee, but for the principles established in *Freedman* and related cases, would be powerless to avoid a contractually imposed forfeiture of his payments and any improvements made by him to the land. On the other hand, the rights of a borrower and a lender upon a default under a deed of trust are the subject of a comprehensive legislative scheme designed to provide adequate protection to the borrower against forfeitures.

Thus, in order for a lender to realize upon his security through the exercise of a power of sale contained in his deed of trust, he must record a notice of default, and three months must elapse after the recording before a notice of sale is published or posted. (Civ. Code, § 2924.) During such three-month period, the defaulting borrower has the right, in the case of a default on a monetary obligation, to cure the default and reinstate the trust deed. (Civ. Code, § 2924c.) Where, as in the present case, the borrower has a substantial equity in the property, the above mentioned statutory provisions afford him an opportunity to refinance his monetary obligations or to sell his equity to a third party. If he does not avail himself of that opportunity, in order to insure that a fair price is obtained the property must be sold at public sale to the highest bidder, and at least 20 days' notice of the sale must be given. (Civ. Code, § 2924; Code Civ. Proc., §§ 692, 694.) Upon a sale under the power of sale, the lender is forever barred from obtaining a deficiency judgment. (Code Civ. Proc., §§ 580b, 580d.)

Other statutory provisions govern the rights of the parties on a judicial foreclosure. (Code Civ. Proc., §§ 725a-730.)

From the above, it is clear that the Legislature intended that a properly conducted foreclosure sale should constitute a final adjudication of the rights of the borrower and the lender.

Accordingly, plaintiffs have failed to state a cause of action,

and the trial court properly sustained defendants' general demurrer to the amended complaint.

The judgment is affirmed.

Traynor, C. J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.