In re John R. MANN, aka John Russell Mann, aka Johnny Mann, Debtor.

John R. MANN, Plaintiff–Appellant,

v.

ALEXANDER DAWSON INC., a Nevada Corporation; ADI Investments, Inc., Defendants–Appellees.

John R. MANN, Plaintiff–Appellant,

v.

ADI INVESTMENTS, INC., Defendant–Appellee.

Nos. 88–6699, 89–55497.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 1990.

Decided July 12, 1990.

William J. Currer, Jr., Los Angeles, Cal., for plaintiff-appellant.

Lawrence Allen, Allen & Allen, Woodland Hills, Cal., Joseph Eisenberg, Leslie A. Cohen, Levine & Eisenberg, Los Angeles, Cal., for defendants-appellees.

Before CANBY, KOZINSKI and LEAVY, Circuit Judges.

KOZINSKI, Circuit Judge:

Today we consider the sad story of John R. Mann, a Chapter 11 debtor in possession who lost his property while pursuing his dreams. He appeals the district court's affirmance of various bankruptcy court decisions that permitted the foreclosure sale of his home and his subsequent eviction.

## I

John Mann is a music man: For more than forty years he has written, arranged and conducted music for a variety of businesses connected with commercials, recording and television. ER III, at 1–2. His long career has yielded many accomplishments, including production of a number of successful records and a hit television series.

But Mann had bigger dreams; he wanted to produce a singing competition called the "Great American Choral Festival." The Festival was to be more than just a business venture; it was going to be something special—"like the Olympics of singing." Id. at 5. Mann dreamed of a "friendly singing competition[ ]" open to singing groups from all over the nation, perhaps from all over the world, "bringing [together] all kinds of demographics of people, all kinds of music [and] all kinds of age brackets." Id. at 6, 9–10. And, if all went well, Mann envisioned a network television special. Id. at 10. Yes, indeed, Mann had dreams, Mann had vision; but, like many a budding entrepreneur, Mann had no money.

To finance the Festival, Mann sought out large corporate sponsors that might pay for the privilege of being associated with this event. At first he was successful, attracting industry giants like Hilton Hotels and Greyhound. Id. at 6. But for reasons unclear from the record, these sponsors turned sour on the idea, and Mann was forced to seek alternative financing. After an unsuccessful attempt to get Avon to sponsor the Festival, Mann decided to put up the necessary funds himself by mortgaging his home. That brought Mann to ADI Investments, Inc (ADI).

On February 17, 1983, Mann and ADI executed a "Loan Agreement" under which ADI was to lend Mann up to $1,350,000 for a term of three years at an interest rate equal to the average prime rate at Bank of America.[1] The loan was secured by a promissory note and deed of trust on three contiguous parcels of land Mann owned in Chatsworth, California: Two parcels contained a total of eleven and a half acres of unimproved land, while the third included Mann's residence and an additional six and a half acres. Mann used part of the loan proceeds to pay off other encumbrances, and used the balance to finance the Festival. Id. at 24–26.[2]

As often happens in such circumstances, the Festival was not the great event Mann had dreamed it would be; indeed, it flopped. On the maturity date of the loan, April 1, 1986, Mann did not possess sufficient funds to make the required balloon payment. ER IA, at 41–42. Mann refused ADI's offer to defer the due date of the balloon payment on condition that the interest rate on the loan be raised to twelve percent. Id. at 42. Thus, on May 9, 1986, ADI recorded a notice of default and scheduled a foreclosure sale for September 10, 1986. Opinion (Sept. 2, 1988) at 4. Two days before the sale was to have taken place, Mann filed a voluntary petition under Chapter 11 of the Bankruptcy Code, which had the effect of automatically staying the sale. See 11 U.S.C. § 362(a).

On October 21, 1987, after a trial, the bankruptcy court lifted the stay and permitted ADI to proceed with the sale of the property. In so doing, the court rejected Mann's claim that the loan agreement was, in fact, the purchase of an equity interest

---

**1.** A day after the parties signed the loan agreement, ADI acquired a twenty-five percent equity interest in the Festival for ten dollars. At the time, however, the Festival was in a negative capital position and its value was uncertain.

**2.** As additional consideration for the loan, ADI received a promise of ten percent of any profit Mann might earn upon development of the Chatsworth property. ER II, at 5. Mann never developed the property.

in the Festival, for which ADI had assumed the risk that the Festival would fail. The court also rejected Mann's claims of fraud, undue influence and interference with his equitable right of redemption.

Mann appealed the bankruptcy court's judgment. Interestingly, he did not appeal the lifting of the automatic stay. *See* Notice of Appeal (Oct. 30, 1987);[3] nor did he seek a stay of the foreclosure sale pending appeal. Although Mann convinced the bankruptcy court to extend the stay twice in the hope of finding a buyer, the property remained unsold. On December 10, 1987, at midnight, the stay expired for the last time. ADI purchased the property the next day with a credit bid of $1,500,050. Approximately nine months later, the district court affirmed the bankruptcy court's October 21, 1987, judgment in its entirety. *See* Opinion (Sept. 2, 1988) & Order (Oct. 19, 1988).

But Mann did not give up his home easily. While his appeal was still pending in the district court, he refused to leave the Chatsworth property, contending that the foreclosure sale was unlawful because, *inter alia*, it violated the automatic stay. In an attempt to resolve this matter, ADI returned to the bankruptcy court—not once, but twice—obtaining orders making it clear that the stay had expired and ADI had possessed the right to foreclose. *See* Order (Jan. 6, 1988); Order (April 15, 1988). Free from the automatic stay, ADI successfully prosecuted an unlawful detainer action in state court. However, because the state court judgment referred only to "John Mann" and not "John Mann, debtor in possession," Mann claimed that the judgment could not be enforced against him without violating the automatic stay. Rather than contest this issue, ADI returned to the bankruptcy court a third time for a modified order for relief from stay. The court granted ADI's request, ordering:

> that it is unnecessary as far as this Court is concerned for John R. Mann to be

named as "Debtor in Possession" in the Superior Court Unlawful Detainer action and/or judgment entered in connection therewith.

Order (Sept. 1, 1988). This order was affirmed by the district court. *See* Opinion (Mar. 30, 1989).

## II

Mann appeals the district court's orders of September 2, 1988, and October 19, 1988, affirming the bankruptcy court's determination that the transaction between Mann and ADI was a bona fide loan transaction and that ADI could foreclose its deed of trust to recover money owed it. Mann also appeals the district court's March 30, 1989, affirmance of the bankruptcy court's clarification of its order lifting the automatic stay, permitting ADI to enforce its unlawful detainer judgment against Mann. Before we consider these contentions, we must determine the appropriate standard of review.

A. Mann contends that the district court erred in reviewing the bankruptcy court's findings of fact in the foreclosure action under the clear error standard. According to Mann, the district court should have reviewed the bankruptcy court's findings of fact de novo, because the foreclosure action was not a "core" proceeding under 28 U.S.C. § 157(b)(2). *See Rosner v. Worcester (In re Worcester)*, 811 F.2d 1224, 1229 n. 5 (9th Cir.1987) (noting in dicta that "proceedings relating to the foreclosure sale's validity ... are not 'core' proceedings"). Likewise, Mann contends that we should give no deference to the bankruptcy court's findings.

█ We will assume without deciding that this was not a core proceeding. That does not mean, however, that the bankruptcy court's fact finding is entitled to little or no deference. In a related non-core pro-

---

**3.** Mann did appeal two orders—dated January 6, 1988, and April 15, 1988—that clarified the October 21, 1987, lifting of the stay. *See* Notice of Appeal (Jan. 15, 1988); Notice of Appeal (Apr. 18, 1988). The appeal of these orders was too late, however, to affect the validity of the relief from the stay granted the previous October. *See* Bankr.R. 8002(a) (ten-day rule for appeal from the bankruptcy court).

ceeding such as this,[4] the bankruptcy judge generally must prepare proposed findings of fact and conclusions of law for the district court, who must then review the bankruptcy court's proposals de novo. 28 U.S.C. § 157(c)(1). However, when all parties consent to the bankruptcy court's jurisdiction in a related non-core proceeding, the district court reviews the bankruptcy court's findings of fact for clear error. *See id.* § 157(c)(2); *Daniels–Head & Assocs. v. William M. Mercer, Inc. (In re Daniels–Head & Assocs.),* 819 F.2d 914, 918 (9th Cir.1987); *DuVoisin v. Foster (In re Southern Indus. Banking Corp.),* 809 F.2d 329, 331 (6th Cir.1987).

Here, Mann chose to file this adversary proceeding in the bankruptcy court, and he never objected to the court's jurisdiction prior to the time it rendered judgment against him. Through this conduct, he consented to the court's jurisdiction. *See Daniels–Head,* 819 F.2d at 918–19; *DuVoisin,* 809 F.2d at 331; *see generally, White v. McGinnis,* 903 F.2d 699 (9th Cir. 1990) (en banc). The district court therefore properly reviewed the bankruptcy court's factual findings for clear error, as will we.

B. Under 11 U.S.C. § 363(m), an appeal of a bankruptcy court's ruling on a foreclosure action generally cannot affect the rights of a good faith purchaser of the foreclosed property, unless the debtor stays the foreclosure sale pending an appeal. *See Onouli–Kona Land Co. v. Estate of Richards (In re Onouli–Kona Land Co.),* 846 F.2d 1170, 1171–73 (9th Cir.1988); *Algeran, Inc. v. Advance Ross Corp.,* 759 F.2d 1421, 1423–24 (9th Cir.

1985). Accordingly, the debtor's failure to obtain a stay normally renders the appeal moot. *Algeran,* 759 F.2d at 1423. This is true even when the purchaser knows of the pendency of the appeal or, as in this case, is a party to the appeal. *See id.* at 1424.

There are, however, two situations in which failure to obtain a stay will not render an appeal moot: where real property is sold to a creditor subject to the right of redemption, *see Phoenix Bond & Indem. Co. v. Shamblin (In re Shamblin),* 890 F.2d 123, 125 n. 1 (9th Cir.1989); *Onouli–Kona Land,* 846 F.2d at 1172–73; and where state law would otherwise permit the transaction to be set aside. *See Rosner,* 811 F.2d at 1228. We consider whether Mann's case fits into either of these wrinkles to the mootness rule.

1. In order to cure a default under a deed of trust, the trustor must pay the entire amount then due the beneficiary within the statutory period of redemption. *Anderson v. Heart Fed. Sav.,* 208 Cal. App.3d 202, 256 Cal.Rptr. 180, 185–86 (1989). In California, the period for redemption runs from the time the foreclosure sale is noticed until five business days before the sale is scheduled to take place, but may never be less than three months. *See* Cal.Civ.Code §§ 2924c(b)(1) & (e); *Smith v. Allen,* 68 Cal.2d 93, 436 P.2d 65, 65 Cal.Rptr. 153, 155 (1968).

ADI noticed the sale on May 9, 1986, and scheduled it for September 10, 1986. Mann did not cure the default. Instead, he filed his Chapter 11 petition on September 8, 1986, just two days prior to the scheduled sale date. Generally, the filing of bankruptcy will stay all proceedings relating to

---

**4.** Bankruptcy courts may hear two categories of proceedings: core proceedings as defined in 28 U.S.C. § 157(b)(2), and non-core proceedings that are "otherwise related to a case under title 11." *Id.* § 157(c)(1). The latter category is very broad, *DuVoisin v. Foster (In re Southern Indus. Banking Corp.),* 809 F.2d 329, 331 (6th Cir.1987), including nearly every matter directly or indirectly related to the bankruptcy. *But see Kelley v. Nodine (In re Salem Mortgage Co.),* 783 F.2d 626, 634 (6th Cir.1986) (28 U.S.C. § 157(c)(1) does not include proceedings involving transactions or events with only "an extremely tenuous connection" to the bankruptcy).

Here, the proceedings concerning the mortgage and foreclosure sale of Mann's property clearly were "related" to his bankruptcy as that term is used in section 157(c)(1). The property was "property of the estate" under 11 U.S.C. § 541(a), it secured an obligation owed by Mann, and the foreclosure sale could not have occurred without the bankruptcy court's permission. *See id.* § 362(a). Thus, there clearly was more than a "tenuous connection" between the proceedings and Mann's bankruptcy.

a foreclosure sale, including the running of a statutory or common law period of redemption. *See* 11 U.S.C. § 362(a); *Harsh Inv. Corp. v. Bialac (In re Bialac)*, 712 F.2d 426, 430–32 (9th Cir.1983) (right to redeem property of the debtor's estate under 11 U.S.C. § 541 and thus covered by the automatic stay); *see also Shamblin*, 890 F.2d at 125 (foreclosure sales in violation of the automatic stay are void). Thus, Mann's bankruptcy filing automatically stayed the foreclosure sales.

Mann's bankruptcy filing, however, did not stay the running of the statutory period for Mann to redeem, as Mann filed when there were less than five business days left before the scheduled sale date. By that time, the redemption period had already expired. *See* Cal.Civ.Code § 2924c(e). The automatic stay does not protect property interests that ceased to be in the debtor's estate prior to the commencement of the bankruptcy; *see* 11 U.S.C. §§ 362(a)(3), 541(a) (automatic stay applies to "property of the estate," which includes all of the debtor's legal and equitable interests in property as of the commencement of the bankruptcy); *In re Cole*, 88 B.R. 763, 767 (Bankr.E.D.Va.1988); nor can it be used to revive such interests. Because Mann neither cured the default nor filed for Chapter 11 protection during the statutory redemption period, he forfeited his right of redemption.[5]

2. While mere inadequacy of price, standing alone, will not justify setting aside a trustee's sale, a sale may be vacated under California law upon a showing of "gross inadequacy of price coupled with even slight unfairness or irregularity." *Whitman v. Transtate Title Co.*, 165 Cal. App.3d 312, 211 Cal.Rptr. 582, 589 (1985). The district court rejected Mann's claim

that the approximately $1.5 million received for the property here was grossly inadequate, *see* Order (Oct. 19, 1988) at 3, and we see nothing in the record that would place that finding in doubt. The bankruptcy court allowed the debtor more than fourteen months to try to sell the property prior to the foreclosure sale, yet Mann was unable to find a buyer at any price. *Id.* That Mann found a buyer willing to pay more for the property eight months after the foreclosure sale does not indicate a gross inadequacy in the price.

Nor is there any evidence of irregularity or unfairness surrounding the sale to ADI. Mann's contention that it was improper to sell the land as a whole is meritless; California Civil Code section 2924g(b) provides that "[w]hen the property consists of several known lots or parcels they shall be sold separately unless the deed of trust or mortgage provides otherwise." Here the deed of trust provides that the trustee may sell the property "at the time and place listed by it in [the] notice of sale, either as a whole or in separate parcels." ER II, at 17.

Likewise, Mann's contention that the sale could not have occurred until twelve days after the automatic stay expired is meritless. Mann claims that Cal.Civil Code § 2924g(d)[6] mandated a seven-day waiting period following the expiration of the stay, and that the bankruptcy court's order itself required an additional five-day delay. However, while the bankruptcy court had in an earlier order imposed a five-day delay in the sale, *see* Judgment After Trial and Order Thereon (Oct. 21, 1987) at 4, the December 8, 1987, order specifically permitted ADI to conduct its foreclosure sale "on or after December 11, 1987," one day after the stay expired. *See* Order Extend-

---

5. Mann also contends that ADI interfered with his right of redemption. However, Mann admitted that ADI did nothing to prevent him from meeting his financial obligations or from redeeming his property. *See* Opinion (Sept. 6, 1988) at 8. Thus, we find no basis for concluding that Mann's right of redemption had been impaired.

6. Cal.Civil Code § 2924g(d) provides in relevant part:

[T]he sale shall be conducted no sooner than seven days after the ... expiration or termination of the injunction, restraining order, or stay (which required postponement of the sale), whether by entry of an order by a court of competent jurisdiction, operation of law, or otherwise, unless the injunction, restraining order, or subsequent order expressly directs the conduct of the sale within that seven-day period.

ing Stay (Dec. 8, 1987) at 2. In addition, section 2924g(d) permits the court to shorten the statutory seven-day waiting period, and the court clearly did so in its order by permitting the sale to go forward immediately following the expiration of the stay.

Because there is no basis for setting aside the foreclosure sale, that portion of Mann's appeal relating to the loan transaction between Mann and ADI and the foreclosure sale is moot. Regardless of how we resolve Mann's other claims concerning the validity of the loan transaction and the sale, there is no way he can recover his property.

C. Mann also appeals the district court's affirmance of two orders entered by the bankruptcy court that clarified the bankruptcy court's order terminating the automatic stay, entered on October 21, 1987. As noted above, ADI requested that the court issue these orders so that it could proceed in state court with its unlawful detainer action against Mann.[7] Mann first contends that the bankruptcy court violated Fed.R.Civ.P. 60(a), applicable to the bankruptcy courts through Bankr.R. 9024, by failing to obtain a leave from the district court before modifying the order.[8] However, because Mann did not timely appeal the lifting of the automatic stay, see Order Clarifying Prior Orders Terminating the Automatic Stay and Awarding Sanctions (Sept. 1, 1988) at 2, the bankruptcy court was not required to seek the district court's permission.

Mann further contends, also without merit, that the bankruptcy court's September 1, 1988, order interfered with an ongoing state court unlawful detainer action. The order, however, merely clarified the fact that the automatic stay had been lifted in regard to the foreclosure property since October 21, 1987, and that ADI could continue to enforce its interests in the property, including pursuit of the unlawful detainer action in state court. The lifting of the automatic stay was well within the province of the bankruptcy court, 11 U.S.C. § 362(d), and did not interfere with the state court proceedings.

D. ADI contends that, as the prevailing party, it is entitled to attorneys' fees pursuant to the promissory note. The note provides that Mann must pay "reasonable attorney fees and costs incurred in the collection of this note or any part hereof without suit, or in the event of suit such additional sum as attorney fees as the Court may adjudge reasonable." ER II at 15. This appeal is part of ADI's efforts to collect the money Mann owed it under the agreement. We therefore remand to the bankruptcy court to determine what attorneys' fees ADI reasonably incurred in responding to this appeal.

ADI also requests sanctions against Mann and his attorney "for their bad faith prosecution of this sham and moot Appeal," Brief of Appellees in No. 89–55497 at 21, and for "excessive bulk" in Mann's excerpts of record. Although most of Mann's arguments are weak, we do not find them frivolous. And, while there are some extraneous materials in Mann's excerpts, we do not believe they unduly burdened us or appellees. We therefore deny ADI's request for sanctions.

### III

The decisions of the district court are affirmed in their entirety. This matter is remanded to the bankruptcy court for fur-

---

**7.** Unlike Mann's claims relating to the validity of the loan transaction and the foreclosure sale, Mann's claims that the bankruptcy court erred in issuing its clarifying orders are not moot; they do not directly relate to the foreclosure sale, but rather to the bankruptcy court's orders issued to enable ADI to proceed with its unlawful detainer action in state court. That Mann failed to obtain a stay on the sale pending appeal does not affect his ability to obtain appellate relief on these issues.

**8.** Fed.R.Civ.P. 60(a) provides:

Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

ther proceedings regarding ADI's attorneys' fees.