Filed 7/28/22  Shiheiber v. JPMorgan Chase Bank CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| HANAN SHIHEIBER, <br><br>     Cross-Complainant and Appellant, <br><br> v. <br><br> JPMORGAN CHASE BANK, N.A., <br><br>     Cross-Defendant and Respondent. | A160189 <br><br> (San Mateo County Super. Ct. No. CIV493254 ) |

Appellant Hanan Shiheiber appeals from a post-judgment award of contractual attorney fees imposed against her after she lost at trial on all of her claims against lender JPMorgan Chase Bank, N.A. (Chase), which were premised on her theory Chase had wrongfully foreclosed on her properties. By separate opinion in her related appeal from the judgment, which was argued together with this one, we have affirmed the judgment entered against her. (*Shiheiber v. JPMorgan Chase Bank, N.A.*, (July 27, 2022, A159313) [nonpub. opn.].)

1

Here, Shiheiber challenges the legal basis for the attorney fees award on two grounds.[1] We reject her arguments and affirm the attorney fees award as well.[2]

## BACKGROUND

Briefly, as described by Shiheiber, all of her claims (and the trial) focused on Chase's foreclosure of her property after a loan officer had made an allegedly false promise to her about how she could reinstate her loan and avoid foreclosure after the loan had become delinquent. As described in a nutshell by the trial court, Shiheiber sued Chase for fraudulently foreclosing on her property. Most of her causes of action against Chase were tried to a jury, and one was tried to the court. All were rejected.

Chase then moved for an award of contractual attorney fees pursuant to two attorney fee clauses in the loan instruments, one in the promissory note and one in the deed of trust.

The trial court granted the motion but reduced the amount of Chase's request. It awarded Chase $878,067.11 in attorney fees and costs, and this timely appeal followed.

---

[1] Our affirmance of the judgment in the related appeal renders moot her contention in this one that the fee award should be reversed if the judgment falls, because Chase would no longer be a prevailing party.

[2] On our own motion, we notified Shiheiber and her former appellate counsel we were considering imposing sanctions payable to the court for asserting frivolous appellate arguments. (See Code Civ. Proc., § 907; Cal. Rules of Court, rule 8.276.) An opposition was filed, and the matter was argued. Having taken the matter under submission, we decline to impose sanctions.

2

## DISCUSSION

On appeal, Shiheiber does not challenge the amount of the fee award but challenges only Chase's legal entitlement to recover its attorney fees, on two grounds.

"A determination of the legal basis for an award of attorney fees is a question of law we review de novo." (*Yoon v. Cam IX Trust* (2021) 60 Cal.App.5th 388, 391.) Moreover, " 'we review the trial court's order, not its reasoning, and affirm an order if it is correct on any theory apparent from the record.' " (*Wal-Mart Real Estate Business Trust v. City Council of San Marcos* (2005) 132 Cal.App.4th 614, 625.)

### I.
### *Chase's Right to Recover Attorney Fees Is Unaffected by the Foreclosure Sale.*

First, citing *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226 (*Alliance Mortgage*) and *Smith v. Allen* (1968) 68 Cal.2d 93 (*Smith*), Shiheiber argues that the attorney fees provisions contained in the promissory note and deed of trust are (in effect) unenforceable, because all of her obligations under those instruments were "extinguished" by the foreclosure sale, including her potential liability for an award of contractual attorney fees for pursuing unmeritorious claims against Chase in this case.

She explains: "When the foreclosure sales occurred in 2010, the sales released Shiheiber from any further obligations under the promissory note or deed of trust. The debt was extinguished, and the note and deed of trust were erased. They could not have authorized an award of attorney's fees entered years after the foreclosure. Because Chase's motion for an award of fees rested on contracts that were no longer in effect, it could not demand fees."

3

This argument rests on a vast oversimplification of the law of secured indebtedness. As we will explain, the two authorities Shiheiber cites are irrelevant, and her position is squarely contradicted by the holdings of three published cases, including one directly on point.

We begin with the caselaw Shiheiber cites, which provides no support for the theory she posits. Neither *Alliance Mortgage, supra,* 10 Cal.4th 1226 nor *Smith, supra,* 68 Cal.2d 93 addresses the recovery of contractual attorney fees, much less the impact of a foreclosure sale on the enforceability of an attorney fees provision contained in any of the instruments creating or securing the defaulted indebtedness. Nor does either case even suggest, more generally, that the governing loan documents cease to exist as binding contracts once the property securing the indebtedness has been foreclosed upon. And they most assuredly do not hold, as Shiheiber characterizes them, that a foreclosure sale "erase[s]" for all purposes the underlying promissory note and deed of trust.

*Smith, supra,* 68 Cal.2d 93, holds that after a judicial foreclosure, the defaulting property owner cannot seek restitution from the lender for costs previously incurred while in possession of the property (i.e., payments toward the property's purchase price and expenses for repairs and improvements). (*Id*. at p. 96.) The reason is because the rights of the parties are governed exclusively by the statutes governing the conduct of judicial foreclosures, which make "clear that the Legislature intended that a properly conducted foreclosure sale should constitute a final adjudication of the rights of the borrower and lender." (*Ibid*.) *Smith* said nothing about a lender's right to recover attorney fees in any context.

The issue in *Alliance Mortgage, supra,* 10 Cal.4th 1226 was "whether a lender's acquisition of security property by full credit bid at a nonjudicial

4

foreclosure sale bars the lender from maintaining a *fraud* action to recover damages from third parties who fraudulently induced the lender to make the loan[].” (*Id.* at p. 1241.)  The Court held that such a fraud claim is *not* categorically barred.  (*Id.* at p. 1246.)  Again, there was no issue concerning attorney fees.  Moreover, *Alliance Mortgage* makes clear that the only consequence of a lender’s full credit bid is that it extinguishes the defaulted indebtedness.  *Alliance Mortgage* did not say it cancels the *contract*.[3] (Further, as Chase points out, Shiheiber has not even demonstrated that there was a full credit bid in this case.)

---

[3] Here, in context, is what the Supreme Court said:

“A ‘full credit bid’ is a bid ‘in an amount equal to the unpaid principal and interest of the mortgage debt, together with the costs, fees and other expenses of the foreclosure.’ [Citation.]  If the full credit bid is successful, i.e., results in the acquisition of the property, the lender pays the full outstanding balance of the debt and costs of foreclosure to itself and takes title to the security property, *releasing the borrower from further obligations under the defaulted note*.  (See *Smith v. Allen* (1968) 68 Cal.2d 93, 96 [‘[I]t is clear that the Legislature intended that a properly conducted [nonjudicial] foreclosure sale should constitute a final adjudication of the rights of the borrower and the lender’].) [¶] Under the ‘full credit bid rule,’ when a lender makes such a bid, it is precluded for purposes of collecting its debt from later claiming that the property was actually worth less than the bid.  (See *Cornelison v. Kornbluth* [(1975)] 15 Cal.3d [590,] 606-607; *Passanisi v. Merit-McBride Realtors, Inc.* [(1987)] 190 Cal.App.3d [1496,] 1503 [after full credit bid, lender cannot pursue any other remedy regardless of actual value of the property on the date of sale].)  Thus, the lender is not entitled to insurance proceeds payable for prepurchase damage to the property, prepurchase net rent proceeds, or damages for waste, *because the lender’s only interest in the property, the repayment of its debt, has been satisfied, and any further payment would result in a double recovery*.” (*Alliance Mortgage, supra,* 10 Cal.4th at pp. 1238-1239, italics added.)

The caselaw that is relevant—which Shiheiber all but overlooks—establishes without question that the foreclosure of property securing a deed of trust does *not* eliminate a lender's right to recover contractual attorney fees for successfully defending claims by a defaulting borrower contesting the validity of the foreclosure sale.

The leading case is *Passanisi v. Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496 (*Passanisi*)).  There, a defaulting borrower brought an action to enjoin a nonjudicial foreclosure sale; lost; and then the lender was awarded attorney fees under an attorney fee clause in the deed of trust.  (*Id.* at p. 1501.)  The trustee's sale then took place, following which the defaulting borrower asserted, in effect, that it was not obligated to pay the prior award of contractual attorney fees because of the foreclosure.  (*Id.* at pp. 1500-1501.) (Specifically, it filed a motion to compel the lender to acknowledge satisfaction of the judgment for contractual attorney fees (*id.* at p. 1501).) The appellate court held the fee award was not rendered unenforceable by the trustee sale (nor, alternatively, was the fee award rendered automatically satisfied).  (*Ibid.*)

In order to clarify the issues, *Passanisi* first summarized the legal framework governing the conduct and consequences of foreclosure sales, background that is unnecessary to repeat here.  (See *Passanisi, supra,* 190 Cal.App.3d at pp. 1502-1505.)  After defining the pertinent legal questions, it specifically held that neither the one form of action rule (Code Civ. Proc., § 726) nor the prohibition against deficiency judgments (*id.,* § 580d) rendered the attorney fee award unenforceable after the property's sale.  (See *Passanisi,* at pp. 1504-1509.)  *Passanisi* observed, among other things, that the lender "was entitled under the terms of the trust deed to attorney's fees incurred in defending the injunction action brought by

6

plaintiffs [and] was not required to forego its right to those fees in order to rely upon its security to satisfy the secured obligation." (*Id*. at p. 1507.) It also explained that the attorney fee award was "entirely independent of the problems encompassed by antideficiency legislation," and merely "the result of the debtor-trustor's voluntary act in bringing an unmeritorious suit which the creditor-beneficiary was required to make expenditures to defend." (*Id*. at p. 1509.)

*Passanisi* also observed that to preclude the lender from recovering its attorney fees for defending a meritless lawsuit brought by the borrower would violate the reciprocity principles of Civil Code section 1717. It explained: "In Civil Code section 1717 the Legislature has decreed that contractual attorney's fee clauses are mutual. Thus, where the contract provides for attorney's fees in the event of litigation, the prevailing party may obtain an award of fees regardless whether that party was contractually entitled to fees. As the Court of Appeal has said: 'Under Civil Code section 1717, what is sauce for the goose is sauce for the gander, . . . .' [Citation.] To accept plaintiffs' contention would be to hold that where a debtor-trustor prevails in an action to enjoin a trustee's sale he may recover an enforceable award for attorney's fees and costs, but where the creditor-beneficiary prevails he cannot obtain an enforceable judgment for such fees and may recover fees only in the event the property can be sold for a sufficient amount to satisfy the indebtedness it secures, together with the costs of the sale, and attorney's fees expended in the litigation. *Such a result would destroy the mutuality of attorney's fee provisions required by Civil Code section 1717*." (*Passanisi,* 190 Cal.App.3d at p. 1509, fn. 9, italics added.)

In short, the attorney fee claim in *Passanisi* (which in that case had been reduced to judgment before the foreclosure sale took place) was *not* "extinguished" by the trustee sale.

*Passanisi* was followed by *Flynn v. Page* (1990) 218 Cal.App.3d 342 (*Flynn*), a wrongful foreclosure case that is directly on point. *Flynn*, a case neither party cites, upheld an award of contractual attorney fees to lenders (there, two sellers who issued a purchase money deed of trust in connection with the sale of their property) who prevailed in an action brought against them by the defaulting borrowers who asserted various tort and other claims (such as fraud, negligent misrepresentation and tortious breach of the implied covenant of good faith and fair dealing) based on allegations their property had been wrongfully foreclosed upon. (*Id*. at pp. 344-345, 349.) As in this case, the borrowers had sought a variety of remedies, including various forms of both injunctive and monetary relief (such as specific performance, constructive trust, rescission and restitution). (See *id*. at p. 344.) As pertinent here, *Flynn* held it was immaterial that the lender was awarded attorney fees *after* the foreclosure sale took place, because application of the principles discussed in *Passanisi* do not depend on the timing of the foreclosure sale. (*Flynn,* at p. 349.) It explained: "[T]he fact that the foreclosure sale [in *Passanisi*] occurred prior to the award of fees is not determinative. What is determinative is the fact that, had [borrowers] prevailed on the complaint, [they] would have been entitled to such an award." (*Ibid*.)

The final case in the trilogy, and the only one the parties cite and discuss in the appellate briefing, is *Jones v. Union Bank of California* (2005) 127 Cal.App.4th 542 (*Jones*) which, like *Flynn*, extended *Passanisi* to an action brought by a defaulting borrower to attack the validity of a foreclosure

8

sale that had already taken place.  There, a lender was awarded contractual attorney fees under the loan instruments after prevailing in an action brought by the defaulting borrower to *set aside* the foreclosure sale.  (*Jones,* at pp. 544-546.)  The appellate court affirmed the award.  (*Id.* at p. 551.)  It observed that, if anything, the situation presented an even more compelling reason to uphold the fee award than in *Passanisi*, noting that the borrowers in *Passanisi* had sought prospective relief to enjoin a foreclosure sale whereas the present case was backwards-looking, seeking to undo one.  (*Jones,* at p. 547.)  *Jones* said that the latter kind of action "was not even contemplated prior to foreclosure" and so "it makes no sense to say that the fees are part of the indebtedness satisfied at the foreclosure sale." (*Ibid.*)

In short, it is settled under *Passanisi*, *Flynn* and *Jones* that a foreclosure sale does not extinguish or preclude enforcement of a prevailing party attorney fee clause in the loan instruments.  Such a provision represents a separate contractual covenant, distinct from the covenant to re-pay the loan on specified terms, that is simply intended to alter the traditional American rule that each side bear their own attorney fees in the event of litigation between them.

The only one of these three cases Shiheiber even acknowledges is *Jones*, which she says is distinguishable because the borrower in that case tried to set aside a foreclosure sale, whereas here she did not try to do that but merely went to trial on a claim for damages against Chase.  But that distinction overlooks *Flynn* which, as noted, was a tort case seeking a variety of remedies including monetary relief and is squarely on point.

Shiheiber's money damages distinction also mischaracterizes the record.  Chase asserts, without contradiction, that Shiheiber *did* seek injunctive relief to prevent the foreclosure sale from going forward or

continuing, in addition to seeking damages.  So that makes *Passanisi* directly on point too (but for the timing of the fee award in that case, which under *Flynn* is irrelevant).

It also is a distinction without a difference.  Regardless of the remedy sought, when a defaulting borrower pursues claims against a lender contesting the validity of a foreclosure sale and loses, an award to the lender of contractual prevailing party attorney fees does not reflect an attempt by the lender to collect on the underlying secured debt.  (See *Passanisi, supra,* 190 Cal.App.3d at p. 1509.)  It "is the result of the debtor-trustor's voluntary act in bringing an unmeritorious suit which the creditor-beneficiary was required to make expenditures to defend.' " (*Ibid.*)  And regardless of the remedy sought, denying the lender its fees would violate the mutuality principles embodied by Civil Code section 1717.  (See *Passanisi,* at p. 1509, fn. 9; *Flynn, supra*, 218 Cal.App.3d at p. 349.)

We could end our analysis there.  But the length of this opinion has been needlessly extended due to, yet again, Shiheiber's inaccurate, and indeed misleading, citation of caselaw.  Shiheiber's damages distinction rests on a quotation taken out of context from an irrelevant case that distinguishes *Jones* on other grounds.  And so we must address it.

Citing *612 South LLC v. Laconic Limited Partnership* (2010) 184 Cal.App.4th 1270 (*612 South LLC*), Shiheiber asserts:  "The borrower's efforts to regain title and vacate a foreclosure make a difference when the lender seeks fees.  As one court held, *Jones v. Union Bank* and related cases '*are inapposite as they addressed situations where a debtor sought to either stop . . . or set aside . . . a foreclosure sale under a deed of trust with the attorney fee award being an obligation imposed on the unsuccessful debtor by the deed of trust; thus, the anti-deficiency provisions of Code of Civil*

10

*Procedure section 580d did not render the fee award unenforceable.'*
(*612 South LLC*, [at p.] 1282. [¶]  When the borrower does not seek to undo a foreclosure sale, the lender cannot recover fees under the extinguished promissory note or deed or trust.  (*Ibid*.)"  (Italics added.)

 *612 South LLC* says no such thing.  The case did not "hold" that "[t]he borrower's efforts to regain title and vacate a foreclosure make a difference when the lender seeks fees."  Nor does it stand for the proposition that "[w]hen the borrower does not seek to undo a foreclosure sale, the lender cannot recover fees under the extinguished promissory note or deed of trust." *612 South LLC* did not involve a foreclosure sale pursuant to a deed of trust nor any issue concerning contractual attorney fees.  The case was a judicial foreclosure action brought by a public bondholder under section 6615 of the Streets and Highways Code, and the issue was whether a personal deficiency judgment against the debtor may be entered in such a case to the extent the foreclosure sale proceeds prove insufficient to cover amounts owing on the defaulted bond and the bondholder's statutorily authorized attorney fees. (*612 South LLC, supra,* 184 Cal.App.4th at p. 1281.)  *612 South LLC* held that a personal judgment against the debtor is precluded in such a case, and distinguished *Jones* and *Passanisi* as follows:

 "[Bondholder] cites [*Passanisi*] and [*Jones*] for the proposition that even where recovery of a deficiency is expressly precluded by statute, a party may recover its award of attorney fees following foreclosure.  *These cases are inapposite as they addressed situations where a debtor sought to either stop (Passanisi) or set aside (Jones) a foreclosure sale under a deed of trust with the attorney fees award being an obligation imposed on the unsuccessful debtor by the deed of trust; thus, the anti-deficiency provisions of Code of Civil*

11

*Procedure section 580d did not render the fee award unenforceable.*"
(*612 South LLC, supra,* 184 Cal.App.4th at p. 1282, italics added.)

In other words, *612 South LLC* distinguished *Jones* and *Passanisi* on two grounds. One was that they were *actions brought by the debtor to challenge a foreclosure*, not an action by the creditor to accomplish one (in that case, under the judicial foreclosure statute governing public bonds). And the other was that they involved *contractual attorney fees*, not attorney fees recoverable by statute for pursuing a judicial foreclosure which were the attorney fees at issue in that case.[4] *612 South LLC* in no way supports the remedies distinction urged here by Shiheiber. It is irrelevant to the contractual attorney fee issue at hand. Shiheiber's quotation of the italicized portion of the above-quoted language is irresponsible and highly misleading.

In its respondent's brief, Chase points out many of the flaws in Shiheiber's argument. Shiheiber then drops this issue entirely in her reply brief, saying nothing.

In sum, the trial court was not precluded from awarding Chase its attorney fees because the properties securing her debts had been foreclosed upon. There was no error.

## II.

### *Chase's Contractual Right to Attorney Fees*

As noted, Chase requested its attorney fees under two provisions, one contained in the deed of trust and one contained in the promissory note. Shiheiber contends that neither attorney fee provision applies to this case. It

---

[4] See Sts. & Hy. Code, § 6615 ("[t]he court having jurisdiction of the action shall also fix and allow a reasonable attorney's fee for the prosecution of the action"); *612 South LLC, supra,* 184 Cal.App.4th at pp. 1280-1281 (quoting and discussing same).

12

is unnecessary to examine the deed of trust because we start and end with the language of the promissory note.

Section 10 of the promissory note broadly states in pertinent part: "In the event of any Default or in the event that *any dispute arises relating to the interpretation, enforcement*[,] *or performance of this Note*, Lender shall be entitled to collect from Borrower on demand all fees and expenses incurred in connection therewith including but not limited to fees of attorneys . . . . Without limiting the generality of the foregoing, Borrower shall pay all such costs and expenses incurred in connection with: (a) . . . . trial court actions, and appeals; . . . . [and] (e) *all claims, counterclaims, cross-claims, and defenses asserted in any of the foregoing whether or not they arise out of or are related to this Note or any security for this Note . . . .*" (Italics added.)

Shiheiber's argument about the inapplicability of the foregoing attorney fee provision rests solely on its plain language. She asserts that it is limited to cases that "involve[] the 'interpretation, enforcement or performance of the note' " (which ignores the much broader language of section 10, subsection (e)), and yet asserts her cross-complaint "did not involve the promissory note" but, rather, "rested on misrepresentations a Chase employee made in response to her request to reinstate the loan," and asserts that "[t]he jury was not called on to interpret the note." She elaborates upon this plain language-based argument in her reply brief.

This argument is supported by *no* legal authority (and virtually no analysis). It is forfeited. (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)

It also is wrong. *Yoon v. Cam IX Trust* (2021) 60 Cal.App.5th 388 affirmed an award of attorney fees to a lender under a fee clause that is narrower than this one, after the lender defeated various tort claims asserted

13

by a borrower who, like Shiheiber, contended he had been fraudulently misled about how to cure a default and avoid the loss of his property. (*Id.* at p. 391.) The promissory note in that case stated—more narrowly—that in the event of default, " 'the Note Holder will have the right to be paid back . . . for all of its costs and expenses in *enforcing* this Note to the extent not prohibited by Applicable Law,' " including reasonable attorney fees. (*Id.* at p. 392, italics added.) *Yoon* held this provision authorized the fee award, even though the claims sounded in tort, not contract. "The gravamen of [the borrower's] lawsuit," it reasoned, "was an effort to avoid the enforcement of the note and deed of trust; his suit arose from defendants' alleged conduct in the course of enforcing the terms of those documents." (*Ibid.*) It agreed with the trial court that the borrower's tort claims " 'directly relate to enforcement of the note through foreclosure.' " (*Id.* at p. 391.) And it rejected precisely the argument that Shiheiber is making: "Plaintiff insists he did not allege a breach of contract, but only 'tortious claims, mainly misrepresentation,' and defendants did not defend based on the note or deed of trust, but only sought to show there was no negligence or misrepresentation in the foreclosure process. *All that is so, but misses the point. At its core, plaintiff's suit sought to avoid his obligations under the note by making claims defendant acted negligently and fraudulently during the foreclosure process.*" (*Id.* at p. 393, italics added.)

Shiheiber tries to distinguish *Yoon* on baseless grounds. She says *Yoon* is not applicable because she herself "did not sue to enforce the note or the deed of trust" but, rather, "[s]he sued for fraud and damages." That is a mixed-up reading of *Yoon*. The borrower in *Yoon* didn't sue for breach of contract either, he sued for fraud. And he lost. And the appellate court

14

affirmed the award of contractual attorney fees to the lender under a similarly-worded attorney fee clause.

And so do we. Shiheiber's claims "related" to "enforcement" of the promissory note because they challenged Chase's right to foreclose on the property under the terms of the promissory note and deed of trust. The trial court did not err in awarding Chase its fees under section 10 of the promissory note.

## DISPOSITION

The attorney fee order is affirmed. Respondent shall recover its costs.

_____
STEWART, J.

We concur.

_____
RICHMAN, Acting P.J.

_____
MAYFIELD, J. *

*Shiheiber v. JPMorgan Chase Bank, N.A.* (A160189)

---

\* Judge of the Mendocino Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.